UNION MATCH CO. v. DIAMOND MATCH CO.*

(Circuit Court of Appeals, Eighth Circuit. April 17, 1908.)

No. 2,658.

1. PATENTS—CONSTRUCTION OF CLAIMS—REFERENCE TO SPECIFICATION.
   Where the claims of a patent specify the elements of a combination, but do not specify the means whereby those elements perform their functions but call for "means" generally, and close with the words "substantially as and for the purpose" described, or specified, or set forth, such words import into the claims the specific means described in the specification, and the claims are limited accordingly.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 243.]

2. SAME—CLAIMS FOR FUNCTIONS—MACHINE FOR BOXING MATCHES.
   The Palmer, Denmead & Baughman patent, No. 538,535, for a machine for boxing matches, claims 1, 2, 3, and 4, for a combination of means for

---

*Rehearing denied June 18, 1908.

jarring the matches into parallelism after they drop into the boxes, and claims 23, 24, 26, and 30, for means for temporarily dividing the boxes into compartments while being filled, are not void as for functions of mechanism only, but, read in the light of the specification to which they refer, are for specific means to accomplish defined results. Such claims, however, are limited by the prior art to a narrow construction and a narrow range of equivalents.

3. SAME—IMPROVEMENT PATENTS—EQUIVALENTS.
When the invention of a patent is along the lines of past efforts, which have met with more or less success, and the inventor has made only an improvement in an art already well advanced, the range of equivalents should be reduced accordingly.

4. SAME—INFRINGEMENT—COMBINATION PATENT.
No device can be held to infringe a combination claim of a patent, unless it employs all the elements of it.

5. SAME.
A patent for a described means or mechanism to accomplish a desired end must be limited to the particular means described in the specification, or their clear mechanical equivalents, and does not cover any other mechanical structure which is substantially different in its construction or in its operation.

6. SAME—MACHINE FOR BOXING MATCHES.
The Palmer, Denmead & Baughman patent, No. 538,535, for a machine for boxing matches, claims 1, 2, 3, 4, 23, 24, 26, and 30, are not infringed by the machine of the Wyman patent, No. 736,668, which, while it accomplishes the same results, does so by different means and methods of operation, and, furthermore, does not contain all the elements of such claims or their equivalents.

Appeal from the Circuit Court of the United States for the District of Minnesota.

Curtis T. Benedict and John E. Stryker, for appellant.
John R. Nolan, for appellee.

Before HOOK and ADAMS, Circuit Judges, and PHILIPS, District Judge.

ADAMS, Circuit Judge. This was a suit to restrain the alleged infringement of letters patent No. 538,535, granted in 1895 to complainant, the Diamond Match Company, as assignee of the inventors, for new and useful improvements in box-filling machines. The specification shows that the device of the patent was to be used in connection with a match-making machine. It is there said:

"The object of our invention is to enable matches to be successfully placed in boxes by mechanical means directly from the match-making machine."

The manufactured matches, as they fall from the machine which dips, dries, and finishes them, form a continuous supply for the machine of the patent, whose primary object was to successfully place them in the well-known pasteboard boxes of commerce for sale and use. The patent has 37 claims 8 of which only are now in controversy. They are the first, second, third, fourth, twenty-third, twenty-fourth, twenty-sixth, and thirtieth. The first four constitute a group of claims for combination of means for jarring matches into a state of parallelism after they drop into the match boxes from the source of supply, and the last four constitute another group of claims for temporarily

dividing the match boxes into compartments to facilitate the proper deposition of matches therein. These claims are as follows:

"1. In a machine for boxing matches, in combination with a source of supply·of the matches to be boxed, a support to hold the box in position to receive the matches from the source of supply, and means for giving the box a to and fro jarring motion, in a direction out of a vertical line, and substantially at right angles to the matches as they are to lie in the box, substantially as and for the purpose specified.

"2. In a machine for boxing matches, in combination with a source of supply of the matches to be boxed, means for passing a box across the path of the matches from such source of supply and a jarring device to give the box a to and fro longitudinal jarring in a direction substantially at right angles to the matches as they are to lie in the box, substantially as and for the purpose shown.

"3.* In a machine for boxing matches, in combination with a source of supply of the matches to be boxed, means for passing the boxes across the stream of matches·from such source, so that they will be gradually filled, as they pass along, and means for jarring the boxes, while being filled, in a direction out of a vertical line and substantially at right angles to the matches as they are to lie in the filled boxes, substantially as and for the purpose set forth.

"4. In a machine for boxing matches, in combination with a source of supply of the matches to be boxed, means for passing a series of boxes placed close together, across the stream of matches from the source of supply, so that several of the boxes will be receiving matches at a time, and means for giving the boxes, as they pass along, a series of jars in a direction out of a vertical line and at right angles to the matches, as they are to lie in the filled boxes, substantially as and for the purpose described."

"23. In a box-filling machine, in combination with a suitable support over which the boxes are moved. and means for so moving them, a series of removable transverse partitions for each box arranged to divide the space within a box up into several divisions, into which the matches can fall from above ·the box and a moving carrier carrying such partitions along with the · boxes, substantially as and for the purpose specified.

"24. In a box-filling machine, in combination with a suitable support for the boxes, and means for. moving the latter along, a series of transverse plates for each box projecting above the level of the box edges, and so situated as·to divide the space just above each box into several divisions, and a moving carrier carrying such plates along with the boxes, substantially as and for the purpose shown."

"26. In a box-filling machine, in combination with a suitable support for the boxes to be filled, and means for moving them along, a moving carrier having a series of transverse plates for each box extending down into and ·above the box, and arranged relatively, so as to divide the space within and. just above the box into several divisions, substantially as and for the purpose specified."

"30. In a box-filling machine, in combination with a support for the boxes to be filled, a moving chain of links, each having one or more transverse plates adapted to project down into a box and divide the interior of the latter up into several divisions into which the matches can fall. from a source of supply above the boxes, substantially as and for the purpose specified."

The first group (1, 2, 3, and 4) have the following elements in combination: (1) A source of supply of matches to be placed in boxes; (2) means for passing the boxes to be filled across the path of matches falling from the source of supply, so that they may be gradually filled as they pass along; (3) a support to hold the box or series of boxes in position to·receive the matches from the source of supply; (4) means for giving the box or boxes a to and fro, longitudinal, jarring motion, or a series of·such motions, in a direction out of a vertical line and substantially at right angles to the matches as they find their bed in the boxes. Broadly speaking, the first group of claims is.

for means whereby boxes in their passage across the path of matches falling from a source of supply are jarred to and fro horizontally, or substantially so, in a direction at right angles to the matches as they lie in the boxes; and this is the principle of the invention of these claims.

The second group of claims (23, 24, 26, and 30) embraces as elements (1) a suitable support over which the boxes are moved; (2) means for so moving them; (3) a series of removable, transverse partitions for each box, so arranged as to divide the space within a box into several divisions or compartments into which matches can fall from above the box; (4) a moving carrier, carrying such partitions along with the boxes. This group, generally speaking, is for means to produce a temporary transverse subdivision of the interior of the boxes while being filled, to facilitate the process of filling; and this is the principle of the invention of those claims.

The defenses are: (1) That the claims are functional, and therefore void; (2) that, in view of the prior art, the claims cover aggregations only, and not patentable inventions; (3) that, in view of the prior art, the claims are at best for the specific mechanism described in the specification, and, as so treated, defendant's structure does not infringe.

A valid patent cannot be secured for a function, a mode of operation, or a result, separate from the means or mechanical devices by which the result is accomplished. Fuller v. Yentzer, 94 U. S. 288, 24 L. Ed. 103; Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 556, 18 Sup. Ct. 707, 42 L. Ed. 1136. Are the claims in question for functions only, and for that reason unpatentable? We are referred at the end of each of them to the specification for a description of the means employed to accomplish the proposed result. After specifying the elements of the combinations, and referring generally to means for producing the jarring motion of the first group of claims, and for moving the boxes in connection with the series of transverse space-dividing blades of the second group, words of reference to the specification appear: "Substantially as and for the purpose" described, set forth, or specified. These words imported into the claims the specific means described in the specification, and the invention is limited accordingly. Seymour v. Osborne, 11 Wall. 516, 547, 20 L. Ed. 33; Westinghouse v. Boyden Power Brake Co., supra.

By the statutes (sections 4884 and 4888, Rev. St. [U. S. Comp. St. 1901, p. 3381,]) the specification and drawings are made a part of the patent, and the patentee is required to file in the Patent Office a written description of his invention and of the manner and process of using it in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains to make or use the same, and in case of a machine he is required to explain the principle thereof and the best mode in which he contemplates applying that principle. This provision of the statute has been interpreted in the case of O'Reilly v. Morse, 15 How. 62, 119, 14 L. Ed. 601, thus:

"Whoever discovers that a certain useful result will be produced, in any art, machine, manufacture, or composition of matter, by the use of certain means, is entitled to a patent for it, provided he specifies the means he uses

in a manner so full and exact that any one skilled in the science to which it appertains can, by using the means he specifies, without any addition to or subtraction from them, produce precisely the result he describes."

It is there held that:

"If this cannot be done by the means he describes, the patent is void; and, if it can be done, then the patent confers on him the exclusive right to use the means he specifies to produce the result or effect he describes, and nothing more."

While the claims of the patent specify the physical elements of the combinations, they do not specify the means whereby those elements perform their intended functions, but call for "means" generally for performing them. By this is not meant, as claimed by defendant's learned counsel, all possible means for accomplishing the result. Such comprehensiveness of claim would not be patentable. Dryfoos v. Wiese, 124 U. S. 32, 37, 8 Sup. Ct. 354, 31 L. Ed. 362. The claims in question by direct terms refer to the specification for the means by which the function, purpose, or object of the invention is to be accomplished, and to that we must look for them.

The means there disclosed for producing the jarring motion of the boxes called for by the first group of claims consists of an endless chain, composed of links about three inches long, the same being about the length of an ordinary pasteboard match box. Each of these links has three fixed transverse cross-bars or blades. This chain is made to operate over two sprocket wheels, situate on a level with each other a few feet apart at the top of the machine, and through a stationary restraining metallic trough underneath, and is kept in motion by power from a main shaft properly geared or belted to one of the sprocket wheels. The sprockets of these wheels, as they revolve, engage with the cross-bars or blades of the endless chain, and propel it around its circuit. Empty uncovered match boxes are fed in constant succession into an upright or curvilinear chute connecting with the trough at one end, and thence are forced into the trough by a feeding-in wheel, and through the entire length of the trough by the cross-bars or blades of the revolving chain engaging with the inner side of the front end of each box. In the progress of the boxes through the trough they pass under a source of supply of finished matches, produced by the match-making machine used in connection with the machine of the patent, which are made to drop into the passing boxes. The trough is made to constantly vibrate longitudinally, by a jarring to and fro motion as it is called, imparted to it by specific means described in the patent, consisting of cams, levers, and springs operated by the shaft below. The motion of the trough is made more efficacious by dividing it into two sections by the employment of a loose tongue and groove joint, so as to permit of a slight lateral jarring motion of each section separately without disturbing the continuity of the passageway for the boxes in the trough. The jarring of the trough thus produced is imparted to the boxes and the matches contained in them. Thereby they are, while the box is passing through the trough, jarred or shaken into parallelism within the box.

The means for making the temporary transverse subdivision of the

interior of the match boxes to facilitate their filling, referred to generally in the second group of claims, are clearly and specifically shown in the specification to consist of the endless traveling chain with its links, each carrying three thin transverse blades already described, operating in this way: The three blades, as the chain revolves, fall into the interior of each empty box fed successively from the curvilinear chute into the trough by the feeding-in wheel, and remain there while the boxes are carried along through the trough and while they are being filled. One blade serves to pull or propel the box along, and the other two to divide its interior into three compartments or spaces while passing through the trough. Thereby matches which fall into the boxes while passing the source of supply are prevented from crisscrossing or going awry when boxes longer than the length of the match are being filled. When the box reaches the end of the trough the endless chain takes an upward direction, the thin blades are thereby drawn out of the filled box, and leave it properly filled with matches in perfect parallelism. A view of the front elevation of the machine of the patent here produced gives a bird's-eye view of it:

In view of the foregoing, we conclude that the claims in question, read in the light of the specification, disclose definite mechanical means, both for producing the jarring and settling of the matches into parallelism and for making the temporary transverse subdivision of the interior of the match boxes. As a result the contention that the

claims are merely for functions or operative effects of a machine, and not the means for producing them, is untenable and cannot be sustained. On the contrary, they are for specific means to accomplish defined functions or results.

The question whether the claims amount to aggregations, and for that reason are invalid, received only incidental consideration by learned counsel; and, as we find other and more satisfactory grounds for our disposition of the case, we shall proceed to their consideration.

The prior art, to which the invention of this patent belongs or is related, has been most exhaustively presented to us by counsel, for the double purpose of avoiding the claims for want of patentable novelty and to limit the scope of the invention for its effect upon the issue of noninfringement. We may properly start out in the consideration of the prior art with the well-known fact that endless chains or carriers, equipped with fingers, arms, blades, or plates for pushing, pulling, or conveying materials of every sort, have long been generally known and used in mechanical arts. Few fields have been more prolific of invention in recent years than the application of these old and well-recognized instrumentalities to new conditions and new uses. By way of illustrating the general activity in this direction attention is called to the Mantion, Millen & Deourion patent, No. 409,481, the Cook's British patent, No. 18,130, Cook & Howard's German patent, No. 66,557, and the Kittenger patent, No. 377,943. These patents disclose a method of propelling an empty box or series of empty boxes along past a source of supply of matches for filling, quite suggestive of the general method of doing the same thing in the patent in suit. They clearly show that the subject of propelling empty match boxes across a source of supply, to be filled while passing by the use of an endless chain as a propelling mechanism, had challenged the inventive genius for some time before the patentees of complainant's patent entered the field.

In like manner, also, the general process of jarring, shaking, or settling down the contents of packages to adjust them to their place of confinement is a common and well-known process with which every man has long been familiar. How to do this effectively in given cases has been the subject of invention. The "grain separator" of Gordon's patent, No. 36,611, the "grain driver" of Tiernan's patent, No. 205,-012, the "package making and filling machine" of Smyser's patents, Nos. 449,275 and 505,888, and other patents to which our attention has been called, disclose industrious attempts at invention on the general subject of the employment of jarring action of any sort, whether vertical, lateral, or horizontal, in the work of fitly settling down substances of one kind or another when put into packages. The "match-making machine" of Donnelly's patent, No. 450,405, and the "match splint bundling machine" of the Hamill, Lentz & Cole patent, No. 490,963, and several other patents called to our attention, disclose devices whereby splints are agitated for the purpose of straightening them and jarred for the purpose of parallelizing them.

Now, coming more nearly to the claims of the patent in suit, we find the Casey, Mantion & Millen patent, No. 418,887, for a "machine for boxing matches," the Lundgren patent, No. 448,445, for a "machine

for filling match boxes," the Peukert patent, No. 386,264, for a "match-making machine," and the two Kittenger patents, Nos. 341,809 and 377,943, for "match-making machines," all of which provide for the jarring of the matches, some at right angles to the matches as they lie, some horizontally, and some vertically, for the general purpose of settling them in proper parallelism with each other in boxes when filled. The subject of means for temporarily partitioning boxes to prevent matches from sluing or crisscrossing in the process of packing them had also received considerable attention by inventors before the patent in suit. The "match splint straightener" of the Jones patent, No. 314,680, the "machine for straightening match splints" of the Wyman patent, No. 322,145, the "match-making machine" of the Peukert patent, No. 386,264, and several other patents in evidence, disclose an appreciation of the advantage of division of spaces in box-filling operations and a resort to different devices for securing it. Without holding that the devices of any of the foregoing patents amount to anticipations of the claims in suit, as to which we express no opinion, it is sufficient for our present purpose to observe that they disclose that many inventors had been engaged in various ways and with varying degrees of success in the effort to accomplish the beneficial results achieved by them.

Complainant's invention, therefore, cannot be classified as a primary one, or the inventors as pioneers in the art to which they devoted attention. On the contrary, we think it clearly appears that their claimed invention concerns improvements made in a well-developed art and accomplished results which are not new, but at best only better than had been accomplished before. In view of this conclusion, complainant is entitled, in determining the issue of infringement or noninfringement presently to be taken up, to a narrow range of equivalents only. The public should be protected against unwarranted monopoly, as much as the inventor against piracy. To accomplish both these ends the patentee is entitled to monopolize the very device of his patent, together with all fair mechanical equivalents thereof. But in determining what are such equivalents the public has a right to demand a careful scrutiny, so that under the pretense of his patent the patentee shall not be allowed to improperly stifle competition and enjoy an unmerited monopoly. When the invention is a primary one, and the inventor a pioneer in a given art, he is worthily entitled to a wide range of mechanical equivalents; but when the invention is along the lines of past efforts, which have met with more or less success, and the inventor has made only an improvement in an art already well advanced, a proper regard to the welfare of the public and of other meritorious inventors requires that the range of equivalents should be reduced accordingly. Miller v. Eagle Manufacturing Co., 151 U. S. 186, 14 Sup. Ct. 310, 38 L. Ed. 121; Kokomo Fence Machine Co. v. Kitselman, 189 U. S. 8, 23, 23 Sup. Ct. 521, 47 L. Ed. 689; National Hollow B. B. Co. v. Interchangeable B. B. Co., 45 C. C. A. 514, 106 Fed. 693.

Certain other well-settled principles may appropriately be adverted to before we take up the question of infringement. No device can be held to infringe a combination claim unless it employs all the elements

of it; in other words, the absence of a single essential element of a combination claim in an alleged infringing structure is fatal to the charge of infringement. Cimiotti Unhairing Co. v. Am. Fur Ref. Co., 198 U. S. 399, 410, 25 Sup. Ct. 697, 49 L. Ed. 1100; Brammer Mfg. Co. v. Witte Hardware Co. (C. C. A.) 159 Fed. 726; Portland Gold Mining Co. v. Hermann (C. C. A.) 160 Fed. 91. A patent for described means or mechanism to accomplish a desired end must be limited to the particular means described in the specification or their clear mechanical equivalents, and does not embrace or cover any other mechanical structure which is substantially different in its construction or in its operation. Eames v. Godfrey, 1 Wall. 78, 17 L. Ed. 547; Boyd v. Janesville Hay Tool Co., 158 U. S. 260, 15 Sup. Ct. 837, 39 L. Ed. 973; Westinghouse v. Boyden B. B. Co., supra; Bryce Bros. Co. v. National Glass Co., 53 C. C. A. 611, 116 Fed. 186; O. H. Jewell Filter Co. v. Jackson, 72 C. C. A. 304, 140 Fed. 340.

With these principles of law concerning mechanical equivalents, infringement of combination claims, and limitation of means for producing given results in view, we approach the decisive question in the case: Is the defendant an infringer? Presumably it is not. Its device is in substantial conformity to the machine of the Wyman patent, No. 736,668, which was issued to defendant August 18, 1903, after the patent in suit was issued to complainant. Both defendant's patent and its alleged infringing device were intended to accomplish the results sought to be accomplished by the two groups of complainant's patent under consideration. The grant of a patent to defendant to accomplish those results, with complainant's patent presumably in view and under consideration, indicates that the Patent Office considered the means of the former to be different from the means of the latter, and raises a presumption that they are in fact substantially different (Boyd v. Janesville Hay Tool Co., and Kokomo Fence Machine Co. v. Kitselman, supra); and this presumption, we think, is reinforced by the facts of the case. The defendant's structure is differentiated from complainant's, both in that it does not employ all the elements of complainant's combinations in the construction of its device, and in that the structure of defendant does not employ the same means or operate in the same way as complainant's. It fails to disclose the requisite identity of means or of operation. Cimiotti Unhairing Co. v. Am. Fur Ref. Co., supra.

A comparison of the two groups of claims with defendant's device will, we think, substantiate the foregoing statement. The great result to be achieved by the device of the first group was to give the boxes while being filled a jarring to and fro motion out of a vertical line and substantially at right angles with the matches as they were to lie in the boxes when filled. The means acting immediately and directly to accomplish this result consist of jarring the trough through which and while match boxes are passing in the process of being filled. The subsidiary means employed for thus jarring the trough are the projecting ledges on the inside of the upper edges of the sides of the trough, the links of the endless chain resting on the top of the boxes, and the smooth spring plate resting on the bottom of the trough and pressing up against the boxes. By these devices the boxes are press-

ed firmly up against the links which carry them along, the links are pressed firmly up against the projecting ledges on the trough, and thereby the jarring motion given to the trough is imparted to the boxes, and their contents are settled into place as desired. This jarring motion is produced by the action of belt, crank, levers, springs, and cams, connected with the power shaft (not necessary now to be specially considered), operating directly upon the two sections of the trough, connected together by the tongue and groove joint already explained. The front elevation of defendant's device for accomplishing the purposes of the two groups of complainant's claims is here reproduced:

This drawing shows a stationary bed, 22, which supports the boxes while being carried along under a source of supply of matches to be boxed; an endless chain, 25, having laterally projecting blades or plates, which enter the box from above, and four sprocket wheels, 26 and 27 above and 28 and 29 below, around which the chain runs. The two lower sprocket wheels, between which the lower run of the chain extends are mounted on blocks or standards, 33, which are so constructed as to slide slightly right and left on the top of the stationary bed. These blocks or standards are connected together rigidly by a bar, 35. An arm, 36, depends from this bar, and is pivoted to one end of a connecting rod, 37, the other end of which rides on an eccentric keyed on the main shaft. In operation the blocks or standards and their connecting bar are given a lateral motion of not over one-eighth of an inch forward and back on the stationary bed, at the rate of nearly 500 times per minute. This rapid vibratory motion is imparted to the blades projecting from the chain down into the

boxes, and they in turn act directly upon the matches and agitate and stir them into place. Incidently, it is true, this vibratory motion is felt by the boxes themselves; but this is the result of, not the means for, jarring the matches.

Without stopping to consider other differences in the structures of complainant and defendant, we are all of the opinion that complainant's trough, with its equipment for holding fast the boxes to be filled, is an essential element of the invention involved in the first group of claims, and that neither the trough nor its fair mechanical equivalent, determined in the light of the rules governing this case already stated, is found in defendant's structure. Moreover, we are also of opinion that the operation of the two structures is essentially different. The jarring motion of complainant's boxes is produced by the jarring motion of its trough, which is imparted to the boxes firmly clasped within it, while the vibratory motion given to defendant's machine is produced, not by any vibratory motion or jarring given to the trough itself, but by the vibratory motion imparted to the chain and its accompanying blades extending down into the boxes by machinery which actuates the sliding blocks or standards of the sprocket wheels and their connecting bar. We cannot regard the method of operation by which defendant's matches are agitated into position either as the same or as the mechanical equivalent of complainant's method of agitating the boxes themselves and thereby securing the desired parallel position of the matches inside. One is by directly agitating, with the radial blades of an endless chain, the matches themselves when in the box; and the other is by agitating the trough and its inclosed boxes, thereby indirectly agitating the matches themselves and bringing them into a state of parallelism. The two are essentially different methods of operation. One, therefore, cannot and does not infringe the monopoly of the other.

The second group of claims, as we have already seen, is for a combination of the means described in the specification for moving match boxes across the pathway of a source of supply with a series of removable transverse partitions or plates for each box, so situated or arranged as to temporarily divide the space within a box into several divisions while the same is being filled. The principle of the invention of this group is the temporary division of the boxes into three compartments while the process of filling is going on, so as to prevent the sluing or crisscrossing of the matches and to bring them into parallelism. This principle, of course, is not patentable. The means or combination of means for producing it alone are patentable. The specification to which the claims, by employing the language, "substantially as and for the purpose specified," refer for their elucidation, contains the following:

"Into and through said trough [which has already been described] * * * match boxes are passed from a suitable source of supply; the connection with the latter and said trough being a chute, F, that has a downwardly inclined portion, through which the boxes descend by gravity, and a horizontal portion, that is in alignment with the trough, the chute between the inclined and horizontal portions being rounded or curved, as shown. * * * The boxes are moved through the horizontal portion of the chute, into and through the trough or way, E, by means of a feed-wheel, G, that has a series

of radial arms or fingers, g and g, that reach into and pass through the chute, as the wheel revolves, and engage, in succession, the front ends of the boxes on their inner sides, adjacent ones of said arms being spaced a distance apart equal to the length of a box. The feed-wheel, G, is mounted," geared, meshed, etc., in a way there described, to the end that its speed may be changed.

The specification also contains the following:

"The operation of our invention is as follows: Boxes being passed into and down the chute, F, are caught by the feed-wheel, G, and passed, in a continuous procession, end to end, into and through the trough, at such rate of speed, relative to the rate of discharge of matches from the match machine, that a box will be filled in its transit across the field of discharge."

The foregoing, in our opinion, makes the feed-wheel, G, an essential element of the claims of the second group. The working machine of the patent, exhibited for our information, shows this feed-wheel as an important feature of it. It is clearly a part of the means of complainant's patent for moving the empty boxes from their source of supply along the trough where they are filled. This motion along or through the trough initiated by the feed-wheel, G, is made to necessarily coact with the endless chain and its transversely projecting plates to produce the desired result of partitioning the boxes while being filled. Absence of the feed-wheel, G, would destroy the combination of the claims. Defendant's device does not employ this feed-wheel or its mechanical equivalent. For this reason, under the authorities already cited to the effect that the absence of a single substantial element of a combination claim in an alleged infringing device is fatal to the claim of infringement, defendant's device does not infringe the second group of claims of the patent.

Conceding, without admitting, that the shortening of the links of the carrier by defendant, the use of one blade on each link instead of three, the method of connecting the blades to the carrier, and other mechanical contrivances employed by defendant are the fair mechanical equivalents of the device of complainant's patent, and that they all produce the result of temporarily dividing up the box space into partitions, there is yet lacking in the defendant's device the identity of means and the identity of operation of complainant's patent necessary to constitute infringement thereof. An essential element of complainant's combination is not found in defendant's device; and this, without considering the other features of construction, which are claimed by defendant to be materially and substantially different from complainant's construction, is fatal to the charge of infringement.

The decree of the Circuit Court, awarding an injunction and an accounting to complainant, was erroneous, and is accordingly reversed, and the cause is remanded to the Circuit Court, with directions to dismiss the bill.