## ACME TRUCK & TOOL CO. v. MEREDITH.

(Circuit Court of Appeals, Eighth Circuit. October 17, 1910.)

### No. 3,299.

1. PATENTS (§ 185*)—CONSTRUCTION—SCOPE.

A patentee who has sufficiently described and distinctly claimed his invention is entitled to every use to which his device can be applied, whether he perceived or was aware of all of such uses at the time he secured his patent or not.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 263; Dec. Dig. § 185.*]

2. PATENTS (§ 246*)—INFRINGEMENT—PATENTS FOR COMBINATION.

A device does not infringe a patent for a combination if any essential element of the combination is omitted without substituting therefor its clear mechanical equivalent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 387; Dec. Dig. § 246.*]

3. PATENTS (§ 328*)—INFRINGEMENT—VEHICLE SPRING.

The Meredith patent, No. 878,081, for a vehicle spring, construed, and *held* not infringed.

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

In Equity. Suit by Charles A. Meredith against the Acme Truck & Tool Company. Decree for complainant, and defendant appeals. Reversed.

Howard G. Cook, for appellant.

James L. Hopkins (Hopkins & Eicks, of counsel), for appellee.

Before HOOK and ADAMS, Circuit Judges, and REED, District Judge.

REED, District Judge. The Acme Truck & Tool Company, a Missouri corporation (which will be called the defendant), challenges by this appeal the correctness of a decree of the Circuit Court which enjoins it from making, using, or vending a vehicle spring made by it in alleged infringement of United States letters patent No. 878,081, issued to the appellee (who will be called the complainant) February 4, 1908, the application for which was filed September 3, 1907. Defenses: That complainant is not the original or first inventor of the invention claimed by him; noninfringement; that the invention is anticipated by a number of prior patents; is lacking in patentable novelty and void. The invention relates to improvements in vehicle springs, is for a combination of parts as described to provide a greater resiliency of the spring and lessen the effect of the jolting of the vehicle in passing over uneven surfaces. In the specification the patentee says:

"In the construction of my invention I provide a spring of the elliptic type consisting of an upper section 4 and a lower section 5, the ends of said sections being connected together in the usual manner at the points indicated by the numeral 6. The lower section 5 is divided into halves, the ends firmly

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

secured in a socket 7 formed in the supports 8. The supports, 8, are so arranged as to be fitted on each side of the vehicle axle, 9, and connected together by a sleeve, 10, placed over the axle, 9, and said sleeve is provided with perforated projecting lugs or ears, 11, through which bolts are passed for retaining the same in position upon the supports, 8. * * *" (The numerals refer to Figure 1 of the drawings of the patent.)

There are two claims which are as follows:

"1. A spring of the class described comprising an upper section; a lower section; supports connected with the lower section; a sleeve mounted upon the axle of the vehicle and pivotally connected to the supports: an auxiliary spring carried by the supports to provide a more even and equal movement to the vehicle springs, substantially as described.

"2. A device of the class described comprising a spring of the elliptic type; a pair of supports connected to the lower section of said spring; a sleeve connected to said supports in combination with an axle upon which the sleeve is mounted; a bolt passing through the upper ends of the supports, and a plurality of springs mounted upon the bolt between and on each side of the supports to assist in the resiliency of the spring, substantially as specified."

The following is figure 1 of the drawings:

Springs of the elliptic type are old, and their purpose is to provide a more even movement of the vehicle in passing over rough or uneven surfaces. The patent in suit is for alleged improvements in such springs to make them especially adaptable to automobiles, increase their resiliency, and relieve the pneumatic tires and body of the vehicle of the jolting incident to its passing over rough and uneven roads. It is contended in behalf of complainant that his invention not only relieves the vehicle of shocks caused by vertical jolts, but also those caused by obstacles which suddenly arrest, in whole or in part, its movement in a longitudinal direction. If this is true, the patentee has failed to describe or claim that as a feature of his invention. A patentee, however, who has sufficiently described and distinctly claimed his invention is entitled to every use to which his device can be applied, whether he perceived or was aware of all of such uses at the time he claimed and secured his patent or not. Stow v. Chicago, 100 U. S.

547–550, 26 L. Ed. 816; Roberts v. Ryer, 91 U. S. 150–157, 23 L. Ed. 267; Miller v. Eagle Mfg. Co., 151 U. S. 186–201, 14 Sup. Ct. 310, 38 L. Ed. 121; National Hollow B. B. Co. v. Interchangeable B. B. Co., 106 Fed. 693–709, 45 C. C. A. 544.

In passing over a rut, or obstacle of any character, it is desirable that the connection between the wheels and the body of the vehicle should be a yielding one; and this it is the purpose of all springs to secure. The complainant's expert says of the spring of the patent in suit:

"When the load on the vehicle is increased the auxiliary springs will yield slightly by virtue of the pivotal mounting of the supports on the bolts, 19, of the drawings. Any up and down motion of the vehicle body which puts the vehicle springs under varying compression will involve a slight yielding around these pivots on which the lower half of the spring is mounted. When the wheel strikes an obstacle which arrests it in part these auxiliary springs also permit a yielding around the axle so that the car body does not deliver a blow upon the rubber tire except through this yielding cushion."

It is obvious that an increased load upon, or sudden jolt of the vehicle in a vertical direction, sufficient to increase the compression of the main spring of the patent would straighten and extend its sections lengthwise, and such compression would cause a slight rotary movement of the supports around the pivots upon which they are mounted and lessen proportionally the distance between the inner ends of the divided lower section of the main spring, and this in co-operation with the auxiliary springs may permit of a greater flexibility of the main spring and relieve to some extent vertical jolts of the car body. The yielding "around the axle" is referred to by this witness in the same sense apparently as the yielding "around the pivots" upon which the supports are mounted. But it is obvious that there cannot be such a yielding. The supports are mounted upon the pivots to permit of such yielding, but the sleeve is rigidly mounted upon the axle and must be to secure it in its proper position thereon. If it is meant that the auxiliary springs permit a movement of the upper and lower sections of the main spring "around the axle," that is only what they permit in the case of a vertical compression upon the spring. The main spring, however, could only move very slightly, if at all, in a direction relatively oblique to the car body, for the momentum of the body would tend to carry it forward in its course, and if this momentum was sufficiently great it would either distort the spring or completely wreck its connection with the car body, or the axle, or both if the movement of the car is arrested, and there would be no yielding in a longitudinal or forward direction. We are, therefore, of the opinion that these auxiliary springs of the patent will no more relieve the wheels and their tires from the effects of a blow of the car body caused by the sudden arrest in whole or in part of its movement in a forward direction than would the ordinary elliptic spring unmodified by such auxiliary parts. So construing the patent the questions remain, Has the complainant invented any new improvement in elliptic springs? or if he has, Does the defendant infringe the same? The division of one or both sections of the ordinary elliptic spring into two equal parts and pivotally connecting the ends thus formed in different ways with one or more intermediate members and auxiliary springs to gain a greater

amount of flexibility than the main spring itself affords, is old, and is disclosed in a number of patents prior to complainant's application for the patent in suit. Among such patents is that to A. F. Hickok, No. 229,609, July 6, 1880. In his specification Hickok says:

"My invention * * * consists in combining with an elliptic spring that is formed of four pivotal pieces, one or more coiled springs being connected to the shorter and inner ends of the four pivotal pieces, whereby the strain upon the elliptic spring is transferred to the coiled one, as will be more fully described hereinafter. The object of my invention is to use both the elliptic and coiled springs on the sides and ends of vehicles, where the elliptic springs have heretofore been used, and thereby make the elliptic spring much less liable to break, and to gain a greater amount of elasticity than is found in the elliptic spring by itself."

The drawings disclose an oval shaped support mounted upon the axle to receive the inner ends of the springs, which ends are pivotally connected to the support and held between a coiled spring below and a plate above: also a similar spring above a crosspiece resting upon the upper section of the main spring.

The patent to R. E. Hardesty, No. 828,206, August 7, 1906, is for improvements in elliptic springs for vehicles. The drawings disclose the lower section, also both sections, of such a spring divided at the center, and the ends thus formed pivotally connected to intermediate supports and springs, the supports for the lower springs being mounted upon the axle and pivotally connected with the inner ends of the main, and outer ends of the auxiliary, springs.

The patents to Buchanan, No. 45,696, January 3, 1865; to Illingworth & Smiley, No. 350,629, October 12, 1886; and to Senderling, No. 565,238, August 4, 1896—also disclose that it was old to divide springs of other types into equal parts and connect the ends thus formed to supports mounted immediately, or through intermediate members, upon the axle of the vehicle. The disclosures of these, without referring to others of the prior patents in evidence, are sufficient to show that at the time of the application for the patent in suit it was old to divide both the upper and lower sections of the ordinary elliptic spring, and springs of other types, into two equal parts, and pivotally connect the ends thus formed immediately or through intermediate members to sleeves or brackets mounted upon the axle of the vehicle. The complainant, therefore, invented nothing new in dividing the lower section of an ordinary elliptic spring and connecting the ends thus formed immediately, or through intermediate bearings, to the axle and body of the vehicle. Pretermitting the question, Does the complainant's method of connecting the inner ends of the lower section of the main spring through the intermediate members with the axle and the auxiliary springs differ substantially from the devices of the prior patents in evidence in this respect? we are of the opinion that defendant does not infringe the complainant's combination.

In patents for a combination it is well settled that if any essential element of the combination is omitted from an alleged infringing device without substituting therefor its clear mechanical equivalent, the charge of infringement is not sustained. Fay v. Cordesman, 109 U. S. 408, 3 Sup. Ct. 236, 27 L. Ed. 979; Boyd v. Janesville Tool Co., 158

U. S. 260–267, 15 Sup. Ct. 837, 39 L. Ed. 973; Cimiotti Unhairing Co. v. American Fur Refining Co., 198 U. S. 399–410, 25 Sup. Ct. 697, 49 L. Ed. 1100; Eames v. Godfrey, 1 Wall. 78, 79, 80, 17 L. Ed. 547; Rowell v. Lindsay, 113 U. S. 97, 5 Sup. Ct. 507, 28 L. Ed. 906; Union Match Co. v. Diamond Match Co., 162 Fed. 148–155, 156, 89 C. C. A. 172.

In Fay v. Cordesman above it is said, beginning at page 420 of 109 U. S., at page 244 of 3 Sup. Ct. (27 L. Ed. 979):

"The claims of the patents sued on in this case are claims for combinations. In such a claim, if the patentee specifies any element as entering into the combination, either directly by the language of the claim, or by such a reference to the descriptive part of the specification as carries such element into the claim, he makes such element material to the combination, and the court cannot declare it to be immaterial. It is his province to make his own claim and his privilege to restrict it. If it be a claim to a combination, and be restricted to specified elements, all must be regarded as material, leaving open only the question whether an omitted part is supplied by an equivalent device or instrumentality."

The construction of the alleged infringing spring as made by the defendant is shown in its photograph thereof, which is as follows:

DEFENDANT'S EXHIBIT, "PHOTOGRAPH DEFENDANT'S SPRING."

Whether or not the spring of the photograph is an elliptic spring, or one of that type, the opinions of complainant's and defendant's experts are directly opposed. It may be admitted that complainant's expert is correct and that it is the lower section of an ordinary elliptic spring divided at its center, though it more nearly resembles a section of the coach platform spring, shown at No. 9½ of the complainant's catalogue of vehicle springs, so divided. The defendant, however, uses in its structure only the lower section of the ordinary elliptic spring, admitting it to be such, cut into halves with its outer ends connected with the frame "A" of the vehicle or car body by means of the link or shackle as shown in the photograph, which is quite unlike the

method of connecting the upper and lower sections of the springs of the patent. Such a construction permits of a movement of the forward end of the spring around the pivot or bolts of the link connecting it with the frame, but permits also a movement of the spring in a longitudinal direction relatively to the vehicle body by means of the shackle connecting the rear part with the frame. A spring so constructed operates in a substantially different manner from that of complainant's patent, for the spring of that patent has no longitudinal movement relatively to the vehicle body; and if defendant's spring was connected to the frame of the vehicle in the manner in which the upper and lower sections of the spring of the patent are connected at their outer ends, the entire spring would have little, if any, spring action, for the rigidity of the vehicle frame "A" would prevent such action except in a very slight degree, and that through the auxiliary springs below the axle. In Eames v. Godfrey, 1 Wall. 78, 17 L. Ed. 547, in speaking of a patent for a combination, it is said:

"The end in view is proposed to be accomplished by the union of all, arranged and combined together in the manner described. The use of any two of these parts only, or of two combined with a third, which is substantially different in form or in the manner of its arrangement and connection with the others, is, therefore, not the thing patented. It is not the same combination if it substantially differs from it in any of its parts."

The complainant has seen fit to particularly specify the upper section 4 of the spring of his patent equally with the lower section 5 as an essential element of his combination. The frame "A" of the vehicle body, shown in defendant's photograph, is clearly not the mechanical equivalent of the upper section 4 of the spring of the patent in suit, for it is a rigid piece of steel forming a part of the car body, and possesses none of the qualities, and performs none of the functions of a spring; nor is the method and manner of connecting the spring and the frame the mechanical equivalent of the bolt 6 of the drawings of the patent in suit.

Neither does the defendant infringe by the spring it placed upon the ambulance wagon of the health department of the city of St. Louis. That spring was installed as a mere temporary expedient, by attaching it to the upper section of a spring then upon the wagon, that the city might have the use temporarily of its vehicle. The entire spring as so constructed did not work satisfactorily, was soon removed, and a rigid bar made to take the place of the upper section. Defendant received nothing for the attachment of its spring to the upper section then upon the wagon, and never made or constructed any others in the same manner.

The spring shown on defendant's advertising card was never made by the defendant. The conclusion therefore is that the defendant does not infringe the complainant's combination. The decree of the Circuit Court is reversed and the cause remanded to that court, with directions to dismiss the bill at complainant's costs.