### GENERAL ELECTRIC CO. v. ALLIS–CHALMERS CO.

(District Court, D. New Jersey. June 26, 1912.)

1. PATENTS (§ 312*)—INFRINGEMENT—PRESUMPTION FROM GRANTING OF SEPARATE PATENTS.

 The presumption is that a device for which a patent is granted does not infringe a prior patent.

 [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 543–549; Dec. Dig. § 312.*]

2. PATENTS (§ 328*)—INFRINGEMENT—ELECTRICAL TRANSFORMERS.

 The Moody patent, No. 591,869, for an electric transformer, is limited by the prior art to a transformer having two separate ventilating systems independently controlled, one for cooling the coils and the other the core. As so limited, *held* not infringed by the device of the Nichols patent, No. 873,166, which does not contain such separate ventilating systems.

In Equity. Suit by the General Electric Company against the Allis-Chalmers Company. On final hearing. Decree for defendant.

Kerr, Page, Cooper & Hayward, and Drury W. Cooper, for complainant.

Lawrence K. Sager and Clifton V. Edwards (Thomas F. Sheridan, on the brief), for defendant.

CROSS, District Judge. The patent in suit No. 591,869, issued October 19, 1897, to one Moody, for an electric transformer, was, as to the claims in issue, together with others, sustained in the case of General Electric Co. v. Wagner Electric Mfg. Co. (C. C.) 123 Fed. 101; s. c., on Appeals, 130 Fed. 772, 66 C. C. A. 82. The objects of the invention as set forth by the patentee are as follows:

 "The present invention relates to transformers specially intended for very high voltages, as twenty thousand to thirty thousand volts, for example, and has for one of its objects to so arrange the energizing-coils that they are well insulated from the surrounding core and from each other, at the same time providing suitable means for ventilation.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"The invention also has for its object to provide a transformer having two complete and separately controlled systems of cooling, one being for the coils, and the other for the laminated core."

And later and in the last clause of the specification, he adds the following:

"It will be seen that there are two separate ventilating systems for cooling the transformer, one for the coils, the other for the iron, and that each of them is controlled independently of the other."

That idea is conspicuously apparent throughout both the drawings and specification. His invention mainly consisted in ventilating the coils and core of the transformer by two entirely separate and independently controllable currents of air. Both the lower court and the Circuit Court of Appeals so found in what will hereafter be called the Wagner Case, and an examination of the prior art discloses that his patent, to be upheld, must necessarily be thus restricted. The opinion of Judge Townsend, who spoke for the Second Circuit Court of Appeals, clearly sets forth the nature and character of Moody's invention in the following language:

"The patented transformer comprises an outer inclosing case mounted on a base provided with a chamber open at the bottom for the admission of air or other insulating medium. Within the said case are primary and secondary coils, vertically placed, and the laminated core, horizontally placed and divided into sections, separated by passages through which the insulating and cooling medium can flow. The fundamental principle of construction consists in so inclosing the coils and their ventilating passages in an inner inclosing case, extending from a point at a considerable distance above the coils to a point equally below the coils, as to insure complete electrical and mechanical insulation of the core and its ventilating system from the coils, and adapt it to independent regulation. It further consists in insulating the primary coils from the secondary coils, and providing ventilating spaces between and around the coils in such a way as to materially reduce the quantity of heat-inclosing wrappings and still preserve sufficient electrical insulation. It is sufficient for the purpose of this inquiry to say that the patentee substituted for the large quantity of insulating covering required by the prior art a small amount of such mechanical insulation, and also ventilating air spaces, and thereby overcame the objections of overheating attendant upon the use of insulating material alone. One current of air enters at the base, passes up through the vertical passages between the coils. Another current passes up at the side, and through the horizontal passages between the laminations of the core, and to the outside of the case. It will be seen that there are two separate ventilating systems for cooling the transformer, one for the coils, the other for the iron, and that each of them is controlled independently of the other."

Several prior patents disclose substantially the features of the patent in suit, other than its dual ventilating system, but the nearest approach to it is perhaps found in a British patent No. 1051 of 1891 to one Ferranti. Ferranti, however, did not show that the passages through the core were independent and independently ventilated from the passages between and about the primary and secondary coils, and it was the absence of this feature, and this only, which apparently led the Circuit Court of Appeals in the Wagner Case to distinguish it from, and thus uphold, the patent in suit. That court said:

"It is only by a consideration of the objects sought and a comparison of the results accomplished by the two devices that the materiality of the dif-

ference can be determined. Generally speaking, Ferranti's device does not appear to be so constructed as to provide for or promote circulatory ventilation. His air spaces 'not only serve to keep the coils cool, but also to secure improved insulation.' Moody's object is 'providing suitable means for ventilation * * * by means of a current of air or other insulating medium.' But, even if the idea of ventilation is sufficiently disclosed (and it is mentioned in Ferranti's specification) his construction precludes the possibility of ventilation through separate and distinct passages about the primary and secondary coils insulated from each other and independent of the transverse passages of the core, which is an essential element of the Moody invention."

In view of Ferranti, two prior patents to Moody, Nos. 516,829 and 558,090, 1896, and a British patent, No. 9817, 1888, to Kapp, not pleaded, but offered in evidence herein, together with a publication known as "Kapp's Book on Transformers," published May, 1895, it is obvious that the claims of the patent in suit must, as will presently be shown, receive a narrow construction. In the Moody patent, No. 516,829 (1894), there is shown a transformer inclosed in a casing, and cooled by an upward flow of air, "through or about the transformer or other electric apparatus dependent upon and controlled by the flow of current through its coils." He, furthermore, arranges by means of an automatic pump to increase the flow of cooling liquid when the load upon the transformer is heavy, and to cut it off when it is light. In Moody's patent, No. 558,090 (1896), the transformer, as in the patent in suit, is inclosed in a casing and supported by a base. In both of them the laminæ of the core lie in horizontal planes, the primary and secondary windings are subdivided into coil sections in vertical planes within the core, which sections are spaced apart to provide vertical ventilation. The cooling medium provided is oil and not air, although the patent suggest a modified use of the latter under certain conditions. This patent shows a transformer construction which, in its general features, is not unlike that of the patent in suit. True, as just stated, it used oil as a cooling medium, but the use of air for that purpose was old and shown in a patent to Thomson, No. 387,123 (1888), and in Moody No. 516,-829, and it would not, under the circumstances, have involved invention to provide means for forcing air through the spaces between the coil sections and through the air spaces in the spacing blocks about and adjoining the iron core. In the Kapp British patent, the primary and secondary windings form separate coil sections which are insulated from each other and from the core by partitions of insulating material, which project beyond the windings, as they do in the patent in suit, and also in Ferranti. Indeed, Mr. Moody testifies:

"That in developing the idea covered by the patent in suit I consider that I did nothing new with reference to providing proper leakage distances on the spaced insulation."

Kapp also provides ventilating spaces in the core. Thus he says:

"Suitable spaces for ventilation being provided longitudinally in each such horizontal group (of laminæ) if desired."

Without stopping to discuss the pertinent disclosures of Kapp's book on transformers, attention will now be more particularly directed to the patent of Ferranti, which so closely approximates the disclosures of the patent in suit, as to demand what alone the Court of Appeals in the Wagner Case allowed, a limited construction of its claims.

Ferranti's transformer shows the core in sections and spaced apart, which spacing is likewise true in respect of its primary and secondary windings. In these spacings insulating casings or partitions are set, which insulate the coil sections from the core, which casings are also spaced from the coil sections so as to permit the air to contact with the coils. Ferranti thus describes their purpose and operation:

"Between the iron and the inner set of conductor coils of a converter, I also maintain an air space and also between this set of conductor coils and the next set and if there are more sets an air space between each and also an air space between the exterior of the outer coil and the portions of the iron rings which go outside it—these air spaces not only serve to keep the coils cool, but also to secure improved insulation. For keeping the coils at the proper distance apart one from the other and from the iron I employ distance pieces of insulating material placed between them.

"Each conductor coil is also subdivided into a number of parallel rings or sections as described in the specification above mentioned. In other forms of converters the division of the coils and separation of the irons may similarly be carried out.

"In addition to using distance pieces for separating the primary and secondary coils from one another and from the iron and making air spaces between them I in some cases use cylindrical divisions of cured ebonite or like insulating material held midway between them in the center of the air spaces."

Ferranti has two sets of air passages, one for the core and the other for the coils, but both sets open at the bottom and at the top into a common air chamber; hence he did not provide two independent and independently regulated systems of ventilation as did Moody.

Sufficient has been said to show that Moody wrought in an art already crowded, and, while he unquestionably made an advance therein, still, under the circumstances, he must, as already stated, be restricted to substantially what he has shown and claimed, and thus restricted the defendant's device does not infringe the claims in issue.

[1] Moreover, the defendant's transformer is made in substantial conformity with a patent to Nichols No. 873,166 (1907). That patent was issued in the face of the patent in suit, which it was avowedly intended to avoid, and which the examiner in the Patent Office evidently believed it did avoid. The Nichols' patent is to say the least prima facie valid, and carries with it the presumption that it does not infringe the complainant's patent. Corning et al. v. Burden, 15 How. 252, 270, 14 L. Ed. 683; Boyd v. Janesville, 158 U. S. 260, 261, 15 Sup. Ct. 837, 39 L. Ed. 973; Kokomo Fence Machine Co. v. Kitselman, 189 U. S. 8, 23, 23 Sup. Ct. 521, 47 L. Ed. 689; Union Match Co. v. Diamond Match Co., 89 C. C. A. 172, 162 Fed. 148, 156; N. J. Wire Cloth Co. v. Buffalo Expanded Metal Co. (C. C.) 131 Fed. 265, 268, affirmed without opinion 135 Fed. 1021, 68 C. C. A. 672.

[2] Furthermore, the fundamental feature of the Moody patent, as above declared, is not found in the alleged infringing device. In this respect the defendant's construction follows the prior art far more closely than it follows the patent under consideration. Two independent and independently regulated sets of passages for the circulation of a cooling medium, one through the transverse passages of the core and the other through and between the coil sections, cannot be found in the defendant's transformer. In it the air flows from a common chamber below, and, after passing through between the coils and through the vertical passages adjoining the core, is reunited in a common chamber at the top. All of the air which passes through its transformer enters at a single inlet at the bottom and passes out through a common outlet at the top, and there is absolutely no means provided for independently regulating the two currents, which is undoubtedly a valuable feature, since the heating of the core is a constant factor, while that of the coils is variable and dependent upon the load which from time to time they carry. Furthermore, the defendant's construction has no ventilating passages through the core itself, since its laminæ are not divided into sections as called for by the Moody patent. Hence, as above stated, it does not have the two sets of passages called for by claim 4, which form "independent cooling and ventilating systems, one for the coils, and one for the core," each of which "is controlled independently of the other."

Claim 11 is upheld in the Wagner Case, because Ferranti had not shown the independently regulated dual ventilating system of Moody, which was declared to be the essential feature of his invention. Thus defined and limited, the defendant does not infringe the claim, because, as already shown, its device does not have two independent sets of ventilating passages. It has no ventilating passages at all through the core, nor, again, does it have insulating casings projected above and below the ends of the coils, as required by the complainant's patent wherein each of the coils has completely inclosing it and extending beyond its end, an insulated casing. The complainant contends, however, that the so-called washers of the defendant's construction are the casings just referred to. But this is not so. They are rather partitions such as were shown in the prior art. They are independent of the casings, which do not extend beyond the ends of the coils.

Moreover, the complainant's expert testified upon his direct examination in respect of Moody's invention as embodied in the patent in suit, as follows:

"Moody faced the serious problem of making a high potential transformer of large current capacity which could be cooled by air, and would keep electrically operative and strong in spite of the passage and transformation through its mechanism of large quantities of electrical energy. He solved the problem by combining features of construction which would (a) minimize the covering necessary to insulate individual coils of wire, and thus greatly assist conduction and convection of heat from conductors of large currents; (b) secure the necessary high insulation between adjacent fractions of the same winding, and between the two windings collectively considered, and between all of the windings and the core, by using refractory solid material

and air spaces; (c) provide for varying to any desired extent the total and relative ventilation of the two general divisions of the structure, the core on the one hand and the coils on the other."

Upon cross-examination, on being asked in substance whether the defendant's transformer embodied the three features of construction above set forth, he replied:

"I understand it embodies all of the features quoted in the question, except, that of the relative ventilation of the two general divisions of the structure. The core on one hand, and the coils on the other."

And under further cross-examination unqualifiedly admitted that the features of paragraphs "a" and "b" were not novel with Moody, from which it follows that the one and only novel feature of the patent in suit, as set forth in paragraph "c" above, is not found in the defendant's transformer, which conclusion, moreover, seems to be demanded in view of the prior art as above outlined.

The bill of complaint will be dismissed with costs.