DENNY RENTON CLAY & COAL CO. et al. v. PORTLAND CEMENT PIPE & TILE CO. et al.

(District Court, D. Oregon. April 17, 1916.)

No. 6885.

1. PATENTS ⬡⟿328—INFRINGEMENT—SEWER PIPE MACHINE.

The Thomas patent, No. 929,898, for a machine for making cement sewer pipe provided with means for rotating the mold and core together in the same direction, and also for locking the core against revolving at a later stage of the operation, is for a combination of old elements, entitled only to a restricted construction; as so construed, *held* not infringed.

2. PATENTS ⬡⟿245—INFRINGEMENT—PATENT FOR COMBINATION.

In a patent for a combination, all the elements specified in the claims must be regarded as material, and the patent is not infringed, if any are omitted, unless a clear equivalent is substituted.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 386; Dec. Dig. ⬡⟿245.]

In Equity. Suit by the Denny Renton Clay & Coal Company and Bruce C. Shorts, trustee, against the Portland Cement Pipe & Tile Company and C. H. Bullen. On final hearing. Decree for defendants.

John B. Cleland and Jos. L. Atkins, of Portland, Or., for plaintiffs. Bauer & Greene, A. H. McCurtain, and J. W. Kaste, all of Portland, Or., for defendants.

WOLVERTON, District Judge. [1] Plaintiffs are the exclusive owners of letters patent No. 929,898, and of the invention and im-

provements therein described, and bring this suit against defendants to enjoin infringement. Complainants' invention relates to machines for making concrete pipes or drains, such as are employed in the construction of sewers, culverts, and the like. Among other specific objects of the invention, are stated the following ·

One is:

"To provide a machine for forming the interior walls of the pipe or drain with a glazed surface, thereby to render the pipe impervious to moisture."

And another is:

"To provide a machine in which the mold and core member are mounted for rotation in the same direction and at the same rate of speed."

Complainants' device, briefly described, consists of a core loosely mounted on the lower end of a shaft, a mold so arranged as to be concentric with the core, the mold showing in the drawings a bell at the top (though no special claim is made in the patent for the bell or any bell core), all mounted on a table, which table by certain means and appliances is made to rotate. This carries with it by rotation the core and the mold. While thus in operation, the cement material, through contrivances to direct its course, is poured into the space between the mold and the core, and by certain other contrivances is tamped down as it finds its way into the interstice. When desired, the core may be locked against rotation by means devised for that purpose, and the mold, with its pipe, will continue to rotate, by which operation the tile or pipe is troweled or glazed on the inside, which gives it a smooth appearance, and renders the pipe to a greater extent, if not wholly, impervious to water.

The locking device, by which the core is locked against rotation, consists of a hook affixed to the top of the drum composing the core, which is made to engage with a collar on the shaft. The core is made collapsible, and may be again expanded, which serves the purpose of loosening the core from the pipe and putting it in position for glazing the inside of the pipe. This feature, however, has but little to do with the question involved by the present controversy. Mr. Kinealy, a consulting engineer of eminence, says:

"The characteristically novel features of the Thomas [complainants'] invention lie in providing a cement sewer pipe machine comprising a mold and a core with means whereby, during the formation of a sewer pipe, the mold and the core may be caused to rotate together, and whereby, after the pipe has been formed, the core may be held at rest while the mold and the pipe are rotated with the inner surface of the pipe in contact with the outer surface of the core."

The defendants' machine, the one which it is claimed infringes complainants' patent, consists of a core-carrying shaft, which is square and is prevented from turning about its longitudinal axis. The core is made in two parts, forming the body or main cylindrical portion of the pipe, and an upper part forming the bell of the pipe. The core is rigidly attached to the lower end of the core-carrying shaft. The bell core, when not in use, is carried up with chains, detachably attached to handles on the sides. The mold is formed in halves. When the halves are in place they rest upon a table, which latter is made

to rotate, carrying the mold in rotation also, but the core remains stationary. The core surrounds a base ring, called by some of the witnesses for the defendants a pallet. A like appliance is used in complainants' patent, but referred to as a ring, or hose ring. This ring also rotates with the mold, but the core remains stationary. When the machine is thus in movement, the cement material is fed into the interstice and tamped in the same way practically as it is fed into and tamped in the complainants' machine. When the material is filled to the offset forming the bell, the bell core is then put in place, and the chains used for lifting or lowering it are detached. The bell core is supplied with lugs intended to rest on the top of the main core. When in this position, the material is fed in so as to fill up the space left between the bell core and the bell of the mold.

The defendants claim that by using a wet mix, which they seem to think is the only kind adapted for use in their machine, it forms a pipe without a glaze on the inner side, and renders it more impervious to water than can be made on plaintiffs' machine. Mr. Kinealy is of the opinion that, in the operation of defendants' machine, the material, when fed in and tamped, adheres to the mold and the ring at the bottom, which revolves with it, and thus causes the inner surface of the pipe to move and revolve about the stationary core, which results in troweling or glazing such surface, the same as is the case with the complainants' machine. As to the bell core he maintains that by friction it is made to rotate with the mold. He further claims that, when the pipe is finished, the bell core is grasped by the handles with hook appliances, and prevented from rotation, while the mold is permitted to rotate, and thus is the inner surface of the bell troweled or glazed. The defendants seem to dispute this particular operation of their machine.

With this description of both machines, including somewhat of their operation, we will be able to advance to a discussion of the question of infringement. But the one question has been presented by the record. Other patents have been offered and admitted in evidence, but these were admitted for only one purpose, and that to enlighten the court respecting the prior state of the art.

Complainants' predecessor was not a pioneer in the art. His device consists in a combination of old elements, and complainants must be held to a largely restricted construction of their patent. Infringement is predicated of the first three claims of the patent. The first claim reads:

"In a machine of the class described, a mold carrier, a mold mounted for rotation on the carrier, a core member movable to operative position within the mold, means for tamping the material in the mold as the latter is rotated, means for rotating the mold and core in the same direction during one operation of the machine, and means for locking the core against rotation while the mold revolves at another stage of operation of the machine."

The second claim differs from the first only in that the words "means for tamping the material in the mold as the latter is rotated" are omitted; and the third differs from the first only as to the features of the tamping mechanism.

It is manifest that the defendants have combined all the elements comprised by claim 1 in their machine, unless it be the last two, namely:

"Means for rotating the mold and core in the same direction during one operation of the machine, and means for locking the core against rotation while the mold revolves at another stage of operation of the machine."

The defendants' device is supplied with no means for rotating the mold and the core in the same direction. The core is built in stationary, and the mold rotates about it at all times. So that there are no means whatever for rotating the two together, and in the very principle of the device none was intended to be. Professor Kinealy explains that defendants' machine has the means for rotating the mold and the core in the same direction during one operation in the driving mechanism, by which the table is made to revolve and carry with it the mold and the bell core. Now, the means alluded to in the claims have no relation to a bell core, but relate to the pipe core, and that it may happen that the appliance called a bell core in defendants' mechanism may be caused to rotate with the mold by friction when the mold is being filled does not answer the call—means for rotating the mold and the core together.

Plaintiffs' claim has relation to a means of rotating the core proper, whether it include a bell core or not, and not to a segregated bell core, which might operate independently of the pipe core, which in defendants' machine is always stationary. I am unable to appreciate how means for rotating a bell core, which is by friction, if it rotates at all, may comprise means for rotating the pipe core proper, which latter involves the very essence of complainants' invention, which is to have a rotating core moving with the mold while the cement material is setting, so that, when the core at the proper time is locked against rotation, the inside of the pipe may be troweled or glazed. Looking to rotation of the bell core only with the mold is taking the shadow for the substance, and does not reach the vital construction of the claim.

I place no stress on the collapsible property of complainants' core member. That is not made an element of any of the claims 1, 2, and 3, and is quite one side of the scope of present inquiry. The sixth element of claim 1 comprises:

"Means for locking the core against rotation while the mold revolves at another stage of operation of the machine."

This again has relation to the core proper; that is, the core by which the pipe is formed, and not the bell core. It follows that means for locking this core against rotation do not necessarily comprise means for locking the bell core in defendants' machine, which bell core is a distinct appliance from any that is claimed by complainants. Indeed, the locking device in complainants' machine is so designed that it locks the core proper, while the means used in the defendants' device is for locking (if used for that purpose at all) the bell core, and one, considering the purpose for which it is employed, is by no means the equivalent of the other. It is my conviction, therefore, that defendants' machine is wholly without means for locking the core proper against rotation, considered in the same relation as complainants have predicated their sixth element in claim 1 as means for locking the core against rotation.

[2] Having come to this conclusion, what is the legal effect of such finding? It is the province of a patentee to make his own claim, and his privilege to restrict it, and, as said by Mr. Justice Blatchford in Fay v. Cordesman, 109 U. S. 408, 421, 3 Sup. Ct. 236, 244 (27 L. Ed. 979):

"If it be a claim to a combination, and be restricted to specified elements, all must be regarded as material, leaving open only the question whether an omitted part is supplied by an equivalent device or instrumentality."

Stated another way:

"In patents for a combination, if the patentee specifies any element as entering into the combination, either directly by the language of the claim or by such a reference to the descriptive part of the specification as carries such element into the claim, he makes such element material to the combination, and the court cannot declare it to be immaterial." Electric Protection Co. v. American Bank Protection Co., 184 Fed. 916, 922, 107 C. C. A. 238, 244.

The latter authority announces also this principle:

"When the patent is for described means or mechanism to accomplish a specified improvement, it will be limited to the particular means described in the specification, or their clear mechanical equivalents."

Still another principle seems to be well established in patent law:

"That, as the inventor is required to enumerate the elements of his claim, no one is an infringer of a combination claim unless he uses all the elements thereof." Cimiotti Unhairing Co. v. Am. Fur Ref. Co., 198 U. S. 399, 410, 25 Sup. Ct. 697, 702 (49 L. Ed. 1100).

See, also, Boyd v. Janesville Hay Tool Co., 158 U. S. 260, 267, 15 Sup. Ct. 837, 39 L. Ed. 973.

It follows, therefore, if any essential element of the combination is omitted from the alleged infringing device, without substituting therefor its clear mechanical equivalent, the charge of infringement is not sustained. Acme Truck & Tool Co. v. Meredith, 183 Fed. 124, 127, 105 C. C. A. 414; Union Match Co. v. Diamond Match Co., 162 Fed. 148, 155, 156, 89 C. C. A. 172; Brown v. Stilwell & Bierce Manuf'g Co., 57 Fed. 731, 6 C. C. A. 528.

Applying these principles, as it is apparent that the defendants are not employing the fifth and sixth elements as set forth in complainants' claim 1, and like elements contained in claims 2 and 3, or any clear mechanical equivalents, they cannot be held as infringers of complainants' patent.

The bill of complaint will therefore be dismissed, with costs to the defendants.