PACIFIC CABLE RY. CO. v. BUTTE CITY ST. RY. CO.

(Circuit Court, D. Montana. November 6, 1893.)

No. 19.

1. PATENTS FOR INVENTIONS—EQUIVALENTS—CABLE CAR TURNTABLES.
Two cable car turntables, having slots underneath the surface platform wide enough at the ends to permit the table to turn a quarter round without interfering with the cable, are equivalent structures, when each is composed of a surface platform comprising two semicircular parts, with a slot between for the passage of the griper shank, such parts resting upon supports, which, in the one case, are attached below to a secondary table supported by a vertical spindle stepped in a bearing at the bottom of the pit, and, in the other case, to end timbers running crosswise beneath the cable, and resting upon semicircular rails, which travel upon pulleys journaled into the bottom of the pit.

2. SAME—METHOD OF OPERATION—DESCRIPTION
A patent for turntables for transferring cable cars from one track to the other, in which the only method of operation described requires the use of duplicate tables operated simultaneously, does not cover the use of a single table for that purpose, although the claim may be sufficient, in itself, to include it, and the single table is an equivalent structure to each table of the patent.

3. SAME—PRIORITY—DATE OF APPLICATIONS—EVIDENCE.
A patentee, who, by evidence, carries back the date of his invention beyond the date of the application for a rival patent, which was first issued, will be adjudged the first inventor, when there is no evidence to carry back the rival invention.

4. SAME—PARTICULAR PATENTS.
Letters patent No. 181,817, issued September 5, 1876, to Joseph Britton, for cable railway turntables for transferring cars from one track to the other, is limited to the use of duplicate tables, and does not cover the use of a single table to accomplish the same function.

In Equity. Suit by the Pacific Cable Railway Company against the Butte City Street Railway Company for infringement of a patent. Bill dismissed.

Wm. F. Booth and C. P. Drennen, for complainant.
Geo. H. Knight, F. T. McBride, and Geo. Haldorn, for defendant.

KNOWLES, District Judge. In this case, plaintiff brings suit in equity against defendant, asking that it be enjoined from using a certain turntable in connection with its Butte City Street Railway, Mont., and for an accounting of profits derived from such use. The ground of plaintiff's claim is that it owns a patent for this turntable, dated September 5, 1876, the same being numbered 181,-817. The patent was issued to one Joseph Britton, and, it is alleged, assigned to plaintiff by him. It is alleged in the bill that defendant is infringing the following two claims in said patent:

Claim 2: "A turntable provided with a slot and passage or chamber extending across it above the point of support of said table, and below its surface, where said chamber is made wide enough at each end to permit a propelling rope or cable to pass through it, and at the same time permit the table to make a quarter rotation without interfering with the rope or cable, substantially as and for the purpose set forth."

Claim 3: "A turntable consisting of the two upper sections, B, B, con-

nected with secondary tables or platforms, C, C, on alternate sides of the center, so as to leave a free space beneath the opposite halves of the sections, B, B, substantially as and for the purposes set forth."

If the patent of plaintiff can be so construed as to apply to a single turntable, it would appear that defendant had infringed the same. The turntable used by defendant is constructed, I think, substantially as one of the tables, taken alone, specified in plaintiff's patent. It has a surface composed of two semicircular platforms. Between them is a slot, along which the griping device of the cable car can pass. Beneath this surface, the cable passes to a point beyond the table, to a sheave, around which it passes. In defendant's table the front and back timbers are placed a sufficient distance below the surface of the car as to allow the cable to pass over them. These timbers are connected to the surface platforms by means of columns; on the sides of the tables are timbers attached to the surface thereof, and extending latterly between the columns, and attached thereto. Below the timbers are semicircular rails or timbers attached thereto, and these travel upon pulleys journaled into the bottom of the pit in which the turntable is placed. Plaintiff's table is thus described in the specifications in the patent:

"In constructing these tables, I make the upper portion of each in two sections, B, B, and these sections I connect with a secondary table or platform, C, which is supported at a short distance below by a vertical spindle or shaft, d, which steps in a suitable bearing, e, at the bottom of the excavation, so that it can rotate horizontally. The table sections, B, are made in the form of a semicircle, and are placed at a short distance apart, so that when they are connected with the platform, C, on the same plane, they form a circular table, with a slot or opening, f, between them. The two sections of each turntable are connected with the platform, C, beneath, by a connection, G, upon opposite sides of the center, leaving a free or open space beneath the opposite half of each section."

It appears to me that the end timbers below the surface in defendant's table occupy the place and perform the functions of the lower platform, C, C, in plaintiff's table, and that the pulleys journaled into the bottom of the pit, in connection with the semicircular rails, in defendant's table, perform the same function as the spindle in plaintiff's table.

The question then arises, are they mechanical equivalents for the devices in plaintiff's patent? An "equivalent" is defined in Walker on Patents (sections 352–354) as a device "which performs the same function as another," and "in substantially the same way as by the thing of which it is alleged to be an equivalent." In the case of Imhaeuser v. Buerk, 101 U. S. 656, the supreme court says of equivalents:

"Hence, it follows that a party who merely substitutes another old ingredient for one of the ingredients of the patented combination, is an infringer, if the substitute performs the same function as the ingredient for which it is substituted, and it appears that it was well known at the date of the patent that is was adaptable to that use."

Again, in the case of Meter Co. v. Desper, Id. 335, the supreme court says:

"It is equally well known that if any of the parts is only formally omitted, and is supplied by a mechanical equivalent performing the same office, and producing the same result, the patent is infringed."

It will be seen from this that, in such a mechanical device as the tables under consideration, an equivalent is not the same thing, but something that performs the same function. In some cases, a spring catch has been held the equivalent of a catch that operates by means of a gravity weight. In some other cases, a lever has been termed the equivalent of a screw. Walk. Pat. § 353.

In the case of defendant's device, the end timbers, as I have called them, hold, by their connection with the connecting columns, the two semicircles together, and constitute them one machine, the same as the lower platform in plaintiff's patent, by means of the connecting columns attached thereto, connecting it with the semicircle sections at the surface, constitute that one table or machine. The pulleys journaled into the bottom of the pit, and the curved rails, perform the same function as the spindle in plaintiff's patent. The table rests upon them, and is turned around thereon.

In Walker on Patents, there is a contention as to whether the equivalents should have been known at the time of the application for a patent, or not. There is no point made upon this question, in this case, and, considering the nature of the equivalents, I don't see how it could arise.

It is claimed, however, that plaintiff's patent is void for the reason that it was covered by a prior invention made by one William Eppelsheimer, for which he received a patent before the date of plaintiff's patent, and for which he made an application on June 28, 1875. It would appear, however, from undisputed evidence, that Britton invented his patented device, and constructed tables embracing the same, which was put into practical use on the Clay Street Hill Railway, in San Francisco, Cal., prior to the application of Eppelsheimer for his patent. We cannot go back of the date of the application of Eppelsheimer, in this case, to determine when he invented his device. There is no evidence upon this point. I, therefore, must find that Britton was the prior inventor of the table in controversy, and, although the Eppelsheimer patent was prior in date to plaintiff's, it does not supersede or avoid the same.

From this discussion, I am led to the point where I must construe plaintiff's patent, and determine what it is entitled to thereunder. Section 4888 of the Revised Statutes provides that the applicant for a patent "shall file in the patent office a written description of the same, and of the manner and process of making, constructing, compounding, and using it, in such full, clear, and concise, and exact terms as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected to make, construct, compound, and use the same; and in the case of a machine, he shall explain the principle thereof, and the best mode in which he has contemplated applying that principle, so as to distinguish it from other inventions."

In sustaining a claim in a patent, the description should always be consulted, and it should be construed in the light of the description. Walk. Pat. § 182; New American File Co. v. Nicholson File Co., 31 Fed. Rep. 289; Lull v. Clark, 13 Fed. Rep. 461. In the beginning of the description of Britton's device, in his patent, Britton, says:

"My invention relates to improvements in turntables, such as are used for transferring cars from one railway track to another, where an endless wire rope is used for propelling the cars along the track or tracks. The only instance, that I am aware of, where duplicate turntables have been used for this purpose, is in the Clay Street Hill Railway, in San Francisco, Cal."

Of these duplicate tables, again, he says:

"These are to be connected by gearing so that both platforms will be rotated simultaneously by power applied to rotate either one of them."

The manner in which they are to be used is thus described:

"When the car has been drawn upon the table, and the rope released from the griper, it is also evident that the table can be turned one-quarter of the way around without disturbing the rope, as the free space under the opposite ends of the sections will allow the table to turn that far without interfering with it. It is further evident that, when both tables are given a quarter turn the slots and tracks, which were before parallel, will be brought in line with each other, so that the car can pass from one table to the other without raising the griper from the tube, as its shank will move in the slots, thus avoiding the necessity of elevating the griping device during the transfer. The car can then be run upon the opposite track by turning the table upon which it has been transferred until its track is in line with the main track."

It will be observed in all this that the only description in the patent given as to the way these tables were to be used was in connection with both tables or duplicate tables. Nowhere in the description is it pointed out how one of these tables could be used for the purpose of transferring a car from one track to another. In a letter written to Britton by H. H. Bates, an examiner of applications for patents in the United States patent office, dated July 17, 1886, and to whom Britton's application for a patent was referred, he says, "The function here being secured, not by one turntable, but by a specific combination of two turntables, which turn simultaneously." This letter is part of what is termed the "file wrapper," in evidence in this case. In turning to Britton's evidence, it will be found that two tables were used in the Clay Street Hill Railway, and to this he refers in his application as being the only place where his invention had been used.

In turning to the statute above quoted, it will be seen that the manner of using an invention must be given in the description in such full, clear, and concise and exact terms as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to use the same. While the claim may be broad enough, there is no description of how one table is to be used, except in connection with the other. In the claims, after describing a table, it is said it is substantially as and for the purposes set forth. This must refer to the description, and there it is set forth that the table constructed and de-

scribed is to be used in duplicate. If a claim is not properly described in a patent, the claim is of no validity. Gunn v. Savage, 30 Fed. Rep. 366.

For the reason that the patent contains no description of how one turntable is to be used by itself, for transferring a car from one track to the other, I find for the defendant; and it is hereby ordered that the bill be dismissed, as to it, and it have judgment for its costs herein expended.