## ELECTRIC PROTECTION CO. v. AMERICAN BANK PROTECTION CO.

## AMERICAN BANK PROTECTION CO. v. ELECTRIC PROTECTION CO. et al.

(Circuit Court of Appeals, Eighth Circuit. November 18, 1910. On Petition for Rehearing, January 30, 1911.)

Nos. 3,349, 3,370.

1. PATENTS (§ 328*)—INVENTION—BURGLAR ALARM.

The Coleman reissue patent, No. 11,626 (original No. 570,906), for an electric burglar alarm, claims 18 and 20, are void for lack of invention in view of the prior art.

2. PATENTS (§ 328*)—INFRINGEMENT—BURGLAR ALARM.

The Robinson & Green patent, No. 708,496, for improvements in electric burglar alarms, relating particularly to an alarm gong to be placed outside of the safe or vault to be protected in combination with a shield inclosing the same, which if removed or attempted to be removed from its position will cause an alarm to be sounded, is for a narrow invention, and entitled only to a correspondingly limited range of equivalents. Claims 1, 2, 3, 7, 8, and 10 construed in connection with the drawings and specification, and held not infringed.

3. PATENTS (§ 177*)—COMBINATION PATENTS—CONSTRUCTION.

In patents for a combination if the patentee specifies any element as entering into the combination, either directly by the language of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

claim or by such a reference to the descriptive part of the specification as carries such element into the claim, he makes such element material to the combination, and the court cannot declare it to be immaterial.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 253, 254; Dec. Dig. § 177.*]

4. PATENTS (§ 243*)—INFRINGEMENT—PATENTS FOR COMBINATION.

In determining the question of infringement of a patent for a combination it is necessary to look at the mode of operation or the way the device works, as well as at the result, and the means by which that result is attained.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 243.*

Patentability of combinations of old elements as dependent on results obtained, see note to National Tube Co. v. Vaiken, 91 C. C. A. 123.]

5. PATENTS (§ 324*)—INFRINGEMENT—APPEAL—INTERLOCUTORY DECREE.

In a suit in equity for infringement of different patents for the same or kindred inventions, such as may be joined in one suit, where the bill is sustained as to some of the patents, but dismissed as to others by an interlocutory decree, no appeal lies from that part of the decree which dismisses the bill as to some of the patents until after the final decree.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 324.*]

6. PATENTS (§ 324*)—SUITS FOR INFRINGEMENT—APPEAL—DECISIONS REVIEWABLE.

Where defendants are jointly sued for infringement, and the bill is dismissed as to some by an interlocutory decree which retains it as to others for a final decree and accounting, such decree is not final, and no appeal lies from that part dismissing the bill as to some of the defendants.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 602; Dec. Dig. § 324.*]

Sanborn, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the District of Minnesota.

Suit in equity by the American Bank Protection Company against the Electric Protection Company and others. From an interlocutory decree granting an injunction and ordering an accounting as to some of the patents involved and dismissing the bill as to others and as to the individual defendants (181 Fed. 350), defendant corporation and complainant both appeal. Reversed on defendant's appeal. Complainant's appeal dismissed.

John E. Stryker, for appellant in No. 3,349, and for appellees in No. 3,370.

Paul & Paul (A. C. Paul, of counsel), for appellee in No. 3,349, and for appellant in No. 3,370.

Before SANBORN and VAN DEVANTER, Circuit Judges, and REED, District Judge.

REED, District Judge. The first of these cases is an appeal by the Electric Protection Company, a Minnesota corporation, from an interlocutory decree granting an injunction and an order for an accounting in a suit of the American Bank Protection Company, also a Minnesota corporation, against it and certain of its stockholders and directors for an alleged infringement of claims 18 and 20 of reissued let-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ters patent No. 11,626, to Clyde Coleman and others August 17, 1897; and claims 1, 2, 3, 7, 8, and 10 of patent No. 708,496, issued to Robinson & Green September 2, 1902. The second is an appeal by the complainant, the American Bank Protection Company, from so much of the decree as dismissed the bill as to the individual defendants, stockholders and directors of the Electric Protection Company, and three of the patents sued upon, viz., Nos. 626,670, 771,749, and 880,020.

The appeal of the defendant the Electric Protection Company may be first considered. Its defenses are invalidity of the patents and noninfringement. The reissued letters patent No. 11,626 is for certain improvements in electrical burglar alarms, the original patent for which was issued November 10, 1896. Briefly stated the alleged invention is for improvements in an electrical alarm system whereby bank vaults and similar structures are surrounded and protected by electrical conductors and devices which, in combination with a time mechanism, are intended to give alarm if attempt is made to enter the vault or protected structure at other than predetermined hours, or to injure or cripple the system at any time so as to render it inoperative. The claims involved in this appeal are:

"18. The combination with a structure or district inclosed and surrounded by electrical conductors, of an electric protective circuit or circuits including said conductors, an alarm device controlled thereby at a distance from the protected structure and time mechanism inclosed within the electrical barrier at the protected district for throwing off the alarm to permit access to the guarded structure, substantially as described."

"20. The combination with a structure to be guarded and a housing, of an electrical alarm system having its parts so disposed as to protect both the structure to be guarded and the housing and cause an alarm to be sounded if either of them is entered, the alarm proper being arranged within the protected housing, and all other parts of the system that may be manipulated or injured so as to cripple the system being arranged within either the structure to be guarded or the protected housing, and time mechanism inclosed within the guarded structure for throwing off the alarm to permit access to the guarded structure, substantially as described."

The invention secured by these and other claims of the patent includes within the combination, time mechanisms for controlling the opening and closing of the main and alarm circuits at predetermined hours. The prior patents in evidence disclose that safes, vaults, and other structures were protected by electric alarm systems long prior to the application for this patent; also that clocks or other time mechanisms for automatically permitting the opening and closing of the doors of the protected structures at fixed hours, without causing an alarm, are a distinct feature of a number of such patents. The Walters patent of May, 1873, No. 138,965, discloses an electrical device in combination with clock mechanism for giving an alarm when the electrical circuit is broken; also a device operated by a time piece that prevents an alarm being given after a certain hour, thus preventing an alarm when the house or other protected structure is rightly open for use. The specifications also disclose that the system may be used in connection with safes, bank vaults and other similar structures. The Yeakle & Steuart patent, No. 370,439 (1887), is for an

electric alarm system, which includes a time mechanism for automatically opening and closing the electrical alarm circuits at predetermined hours. The patents to Pierce, No. 287,775 (1883) and No. 322,317 (1885), are for improvements in electric time locks, whereby the doors of safes or like structures may be automatically locked and the safe or other protected structure closed against entry until a fixed time. The specifications and drawings show the clock mechanism to be placed upon the inner side of the safe door and beyond the reach of manipulation while the door is closed. The Stern patent, No. 315,408 (1886), is for an electric burglar alarm in which the premises or structure to be guarded or protected is in electrical connection by means of insulated braided wires with an alarm station separate and distinct from the protected premises in which an alarm will be immediately sounded at the alarm station if the connecting wires are broken or cut. The Smith patent, No. 251,071 (1881), is for an electric alarm system to prevent cabinets or other places where money or other valuables are kept from being burglarized without sounding an alarm. The Shivler patent, No. 197,416 (1887), is for improvements in electric burglar alarms for protecting safes, vaults, and like structures, and includes clockwork and mechanism driven by such clockwork for automatically opening and closing the alarm circuit at predetermined times. The Holmes patent, No. 63,158 (1867), is for electro-magnetic circuit breaking clocks, whereby the electrical circuits may be opened or closed at predetermined times. Other patents disclose similar devices. Mr. Coleman is conclusively presumed to have known of all of these prior patents at the time of his alleged invention and when he applied for a patent therefor. Mast-Foos & Co. v. Stover Manfg. Co., 177 U. S. 485, 493, 494, 20 Sup. Ct. 708, 44 L. Ed. 856. They clearly show the use of electric alarms for the protection of bank safes, vaults, and similar structures with time mechanisms in combination therewith for automatically operating the system and opening and closing the alarm circuit whereby an alarm may or may not be sounded during predetermined hours. or periods of time. It may be that Mr. Coleman's invention, other than as shown in claims 18 and 20 of this patent, differs substantially from those of the prior patents. If so, he has presumably secured his invention therefor by such other claims, which are not involved in this appeal. The feature of claims 18 and 20, which distinguishes each from the other claims, is the location of the time mechanism "within the electrical barrier at the protected district" which, under the specifications, means the "guarded housing" at the alarm station, or "within the guarded structure" itself. Claim 2 of the patent includes, "suitable time mechanism" for operating a switch common to the main and alarm circuits but does not limit the location of such mechanism to any particular place within the system. Claims 5, 6, and 16 also include time mechanism for operating a switch common to the main and alarm circuits and each limits the location of such time mechanism "within the guarded structure." These claims are not involved in this appeal, and no opinion need be, or is, expressed as to their validity. The exact location of the time mechanism within his system

is apparently not regarded by Coleman as an essential element of his invention, for, in the specification referring to the switch which operates the alarm and main electrical circuits, he says:

"It may be operated manually, but I prefer to operate it automatically by means of some suitable mechanism."

To this end he shows a time piece so arranged with the electrical mechanism that it will break and re-establish the main and alarm circuits at a predetermined time, and says:

"It would not be desirable to place within the guarded housing the clock or other mechanism for automatically operating the switch, for the reason that it would be inconvenient to get at it to wind it; for this reason I prefer to place the time mechanism within the guarded structure and to connect it with the switch operating mechanism by means of wires with the wires of the main circuit."

It is entirely plain that the clock or other time mechanism could be connected by wires with the main circuit wires if it is conveniently located at any place within the system, and its location in any particular system is a matter of convenience only to be determined in constructing the particular system. Claim 3 of the Yeakle & Steuart patent is as follows:

"In an electric burglar-alarm, a local battery circuit used for the lacing, or an equivalent of the lacing, of a place to be guarded, in which is included a circuit breaker connected with and operated by a time mechanism which acts to break the local circuit automatically at predetermined intervals, in combination with a time mechanism and a main line by the devices in the local battery circuit."

The attention of Mr. Carter, complainant's expert, was called to this claim and he was asked if it did not suggest that the clock mechanism is to be placed within the guarded structure. He answered:

"I would not be able to conclude from this claim alone whether the clock mechanism was intended to be included within the guarded structure or not, but from an examination of the drawings of the patent, I think the patentee leaves it open to place the clock mechanism within the guarded structure if desired."

It would of course be desirable that the time mechanism which controls the opening and closing of the alarm circuits should be protected from unauthorized interference as well as any other part of the system. This would readily suggest itself to any one skilled, or unskilled for that matter, in the art of constructing these systems, and is in fact suggested inferentially at least by the claim of the Yeakle & Steuart patent above quoted. The location of the clock or other time mechanism within the vault or guarded structure does not, therefore, in our opinion, arise to the dignity of invention, and claims 18 and 20 of this patent which so locate the same are void.

The Circuit Court sustained claims 1, 2, 3, 7, 8, and 10 of the Robinson & Green patent No. 708,496, and held that they were infringed by the corporate defendant. This patent is for improvements in burglar-alarms and relates particularly to an alarm-gong to be placed outside of the safe or vault to be protected, in combination with a shield inclosing the same, which if removed, or attempted to be, from

its position, will cause an alarm to be sounded. Figure 2 of the drawings illustrates the system, and is as follows:

Fig. 2

The claims involved in this appeal are:

"1. The combination in a burglar-alarm, with a suitable gong located outside of the vault, safe or other receptacle or apartment to be protected, of a shield inclosing said gong and means for closing an electric circuit that causes said gong to be sounded upon the moving of said shield, substantially as described.

"2. The combination in a burglar-alarm, with a suitable gong, of a shield inclosing said gong, a tube supporting said shield and means connected with said tube for closing an electric circuit upon the moving of said shield, substantially as described.

"3. The combination with the wall of the vault, safe or other receptacle, of an alarm-gong located on the outside thereof, a shield inclosing said gong, a tube supporting said shield and extending through said wall and means connected with said tube for closing an electric circuit upon the movement of said shield and tube, substantially as described."

"7. The combination in a burglar-alarm, with a suitable gong located outside of the vault, safe or other receptacle or apartment to be protected, of a shield inclosing said gong, an electric circuit in which said gong is located and means for causing said gong to be operated through said circuit upon the moving of said shield, substantially as described.

"8. The combination, with the wall of the vault, safe or other receptacle, of a suitable gong or alarm located on the outside of said wall, an electric circuit in which said gong is located, a shield inclosing said gong and means for closing said electric circuit, and thereby operating the said gong or alarm, upon the moving of said shield, substantially as described."

"10. The combination of a vault, safe or other receptacle of a suitable gong or alarm located outside of said receptacle, a shield inclosing said gong and means located within said vault, safe or receptacle for operating said gong upon the moving of said shield."

Each of these claims is for a combination, but claims 1, 2, 7, and 10 do not include the wall of the vault as a part thereof. Claims 3 and 8 each includes such wall. Under claims 1, 2, 7, and 10 the location of the gong and its protecting shield might as well be upon the wall of the building in which the vault is located as upon the wall of the vault. Each of the claims contains the words, "substantially as described," and the drawings and specifications show that the gong, 4, and its protecting shield, 5, are to be placed upon the outer wall, 1, of the vault. A fair interpretation of the claims, in connection with the drawings and specifications, requires that they be so located. The drawings also show that the shield is held in position by the tube, 8, set into the lug, 7, upon its inner or concave surface, extending thence through an insulated sleeve or bushing, 2, in an opening in the wall to the interior of the vault, and that the means for sounding the gong, if attempt be made to remove the shield, are located within the vault. The patent comes late in the art, is for specified improvements that show a slight advance, if any, over the prior patents, in particular those to Duncan & Rowell, No. 109,193 (1870), and No. 129,913 (1872); to Haseltine, British patent, No. 3.108 (1871); to Freed, No. 626,684 (1899) and No. 667,123 (1901), and perhaps others. The invention, conceding it to be such, is therefore within a narrow compass, and its range of equivalents should be correspondingly limited. Boyd v. Janesville Hay Tool Co., 158 U. S. 260, 15 Sup. Ct. 837, 39 L. Ed. 973; Knapp v. Morss, 150 U. S. 221–228, 14 Sup. Ct. 81, 37 L. Ed. 1059; National Hollow B. B. Co. v. Interchangeable B. B. Co., 106 Fed. 693–710, 45 C. C. A. 544. When an invention is a primary one, and the inventor a pioneer in the art to which it relates, he is justly entitled to a wide range of equivalents; but when it is for a slight improvement upon prior efforts which have met with more or less success, its range of equivalents should be correspondingly limited; and when the patent is for described means or mechanism to accomplish a specified improvement, it will be limited to the particular means described in the specification, or their clear mechanical equivalents. Union Match Co. v. Diamond Match Co., 162 Fed. 148–155, 89 C. C. A. 172. In patents for a combination, if the patentee specifies any element as entering into the combination, either directly by the language of the claim or by such a reference to the descriptive part of the specification as carries such element into the claim, he makes such element material to the combination and the court cannot declare it to be immaterial. Fay v. Cordesman, 109 U. S. 408–420, 3 Sup. Ct. 236, 27 L. Ed. 979. Each of the claims 1, 2, 3, 7, and 8 of this patent should therefore be read in connection

with the drawings and specifications, and as so read each limits the means for actuating the gong to a position within the interior of the vault; and claim 10 by its terms expressly so limits such means.

The question remains, Does the defendant infringe either of these claims? To sustain the charge of infringement the infringing device must be substantially identical with the one alleged to be infringed in (1) the result attained; (2) the means of attaining that result; and (3) the manner in which its different parts operate and co-operate to produce that result. If the devices are substantially different in either of these respects the charge of infringement is not sustained. Machine Co. v. Murphy, 97 U. S. 120, 24 L. Ed. 935; Eames v. Godfrey, 1 Wall. 78, 17 L. Ed. 547; National Hollow B. B. Co. v. Interchangeable B. B. Co., 106 Fed. 693, 45 C. C. A. 544; Adams Electric Railway Co. v. Lindell Ry. Co., 77 Fed. 432, 23 C. C. A. 223. In determining the question of infringement of a patent for a combination, it is therefore necessary to look at the mode of operation or the way the device works, as well as at the result and the means by which that result is attained. Machine Co. v. Murphy, above. As the end in view is to be accomplished by the union of all of the parts arranged and combined together in the manner described, the use of any two of these parts only, or of two combined with a third, which is substantially different in form or in the manner of its arrangement with the others, is, therefore, not the thing patented. It is not the same combination if it substantially differs from it in any of its parts. Eames v. Godfrey, 1 Wall. 78, 79, 17 L. Ed. 547. The specifications and Figure 2 of the drawings of the patent show that the tube, 8, which supports the shield, 5, upon the outer wall of the vault, is insulated by the sleeve or bushing, 2, through which it extends to the interior of the vault where the means for actuating the gong are located, and there arranged to contact with the end of the tube and sound the alarm if the shield and connecting tube be disturbed. In this combination the insulating sleeve or bushing, 2, and plate, 3, are essential elements. In the defendant's system the gong and all the means for actuating the same are located upon the outer wall of the vault, and are protected only by the shields which cover them, the whole being mounted upon a baseboard attached to the exterior of the wall, where they may be much more easily interfered with or crippled than if located within the vault. It omits entirely the insulating sleeve of the patent, and substitutes nothing therefor; in fact such a sleeve is not an essential element of its system, for it locates the battery and all other means for actuating the gong upon the outer wall of the vault. True the defendant shows a hollow metallic tube in some of its physical exhibits, extending through the walls of the vault, and through which it passes an iron rod by means of which the shields and baseboard are supported upon the exterior of the wall; but this hollow tube is not insulated, and is not therefore the equivalent of the insulating sleeve or bushing of the patent in suit, is not designed to, and does not in fact operate as such. The insulating device of the defendant is a collar or ring upon that portion of the iron rod exterior to the wall and under the protection of the

shields; but the method of insulating that rod and of contacting the flat spring with it are entirely different from the methods of insulating the tube, 8, and actuating the alarm bell or gong as shown in the patent in suit and does not infringe the same. The conclusion, therefore, is that the defendant does not infringe either of the claims 1, 2, 3, 7, 8, or 10 of the patent in suit.

The complainant's appeal challenges the correctness of the decree dismissing the bill as to the individual defendants, stockholders and directors of the corporate defendant, and as to patents Nos. 626,-670, 771,749, and 880,020. A motion is made by the defendants to dismiss this appeal upon the ground that the decree from which it is taken is interlocutory only and not final. In Ex parte Enameling Co., 201 U. S. 156, 26 Sup. Ct. 404, 50 L. Ed. 707, it is held by the Supreme Court that where in a suit for the infringement of several claims of a single patent, the bill is sustained as to some of the claims and an interlocutory injunction is granted and an accounting ordered as to them, but is dismissed as to the others, that such decree is interlocutory only, and no appeal lies from that part of the decree which dismisses the bill as to such other claims until after the final decree. This decision in principle covers the case of a suit for the infringement of different patents for the same or kindred inventions, which may be joined in one suit, and when in such a suit the bill is sustained as to some of the patents but dismissed as to others by an interlocutory decree, no appeal lies from that part of the decree which dismisses the bill as to some of the patents until after the final decree.

As to the individual defendants, the rule is that, where defendants are jointly sued with others, and the bill is dismissed as to some but is retained as to others for a final decree and accounting, the decree is not final and no appeal lies from the part dismissing the bill as to some of the defendants so jointly charged. Hohorst v. Hamburg American Packet Co., 148 U. S. 262, 13 Sup. Ct. 590, 37 L. Ed. 443; Standley v. Roberts, 59 Fed. 836–839, 8 C. C. A. 305. The bill in this case fairly construed charges the individual defendants and the corporate defendant jointly with the infringement of all of the patents in suit. The conclusion, therefore, is that the complainant's appeal should be dismissed as to the three patents above mentioned, and the individual defendants. The decree of the Circuit Court is therefore reversed in No. 3,349, the appeal of the Electric Protection Company, and the cause remanded to that court, with directions to dismiss the bill as to claims 18 and 20 of the reissued patent No. 11,626, and claims 1, 2, 3, 7, 8, and 10 of the Robinson & Green patent No. 708,490. In No. 3,370, the appeal of the American Bank Protection Company is dismissed. It is ordered accordingly.

SANBORN, Circuit Judge (dissenting). I am unable to come to the view of the majority of the court that claims 18 and 20 of reissued letters patent No. 11,626 to Clyde Coleman and others are void. These claims are for new combinations of old devices. They are of course not anticipated by the fact that a part of the old devices may be found in one and another part of them in another prior patent.

The claim for such a combination is no more anticipated than it is infringed by a combination which lacks any one of its mechanical elements. The best study of the prior patents and the evidence that I am able to give fails to satisfy my mind that any of the prior patents discloses a combination of all the essential elements of either of the combinations disclosed by these claims. From each of the combinations described in the prior patents some element, and from most of them many elements, of the combinations of the claims are lacking. As I understand these prior combinations, none of them has the combination of (1) a vault or structure to be guarded, (2) a distant housing inclosing the alarm, (3) the electric connecting wires between them forming both an open and a closed circuit, (4) a perfect electrical protection of the foregoing elements so that they may not be tampered with from the outside without giving the alarm, unless the electrical protection is suspended by the action of the clock, and (5) a clock within the electrical protection adapted to open the protection at a predetermined time. Because there seems to me to be no prior combination of all these elements capable of performing the functions of these claims in any of the prior patents, I am of the opinion that the Circuit Court was right in sustaining these claims.

It also seems to me that the defendant's device is the mechanical equivalent and an infringement of the combination described in claims 1, 2, 3, 5, 7, 8, and 10 of patent No. 708,496 to Robinson & Green. The defendant's combination appears to me to perform the same function by the same or equivalent mechanical elements as does the combination of Robinson & Green. It would serve no useful purpose to set forth in detail the reasons for this conclusion for they would consist of a comparison of the details of these combinations which would present no precedent for subsequent decisions. Hence I limit this memorandum to a statement of my inability to assent to the views of the majority upon the two subjects which have been mentioned.

## On Petition for Rehearing.

REED, District Judge. The complainant (appellee) has filed a petition for rehearing in which it is alleged, among other things, that in the opinion upon the question of the infringement of the Robinson & Green patent, No. 708,496, the court has wholly misapprehended the defendant's structure, which it is claimed infringes that of the patent, and states as a fact that "the battery and all other means for actuating the gong (in the defendant's system) are located upon the outer wall of the vault," and that the ultimate conclusion of the opinion upon the question of infringement rests wholly upon this alleged mistake of fact. The statement of the opinion of which complaint is made, standing alone, may be misleading as to the construction of the defendant's system in respect to the location of some of the devices therein referred to. But this does not affect in the least the conclusion reached upon the question of infringement, for it was only the location of the immediate mechanism for closing the electric circuit, viz., the circuit-closing devices, the manner of their construction, their mode of operation, and the omission from defendant's system

of the insulating sleeve, 2, of the patent, that it was held relieved defendant's system from infringing that of the complainant. The location of the battery, and of the mechanisms other than the "circuit-closers," is, therefore, quite immaterial, and the statement that they are upon the outer wall of the vault and under the protection of the shield only may be eliminated from the opinion without disturbing in the least the conclusion upon the question of infringement. This will appear upon a moment's consideration of the patent, and the conclusion of the opinion respecting the infringement. In the specification forming a part of the patent in suit it is said, after describing the mechanisms, that:

"A circuit may be closed through the automatic circuit-closer in any one of three ways: First, by any suitable circuit-closing devices placed between conductors 27 and 28, such, for instance, as a circuit-closing device arranged upon the vault or safe door, and adapted to be closed by the opening of said door or the withdrawal of the bolts on the door; second, by any outward movement of the shield and tube, 8, thus bringing the washer, 9, into contact with the sleeve or collar, 12; third, by any metallic instrument inserted through an opening in the shield, 5, and brought in contact with the metallic gong-frame."

The claims of the patent involved in this appeal are only those which relate to the second method of closing the circuit, viz., by bringing into contact the washer, 9, and the collar, 12, both of which are arranged upon the end of the tube, 8, within the vault; and the only question for determination, admitting these claims to be patentable, is: Are they infringed by the defendant's "circuit-closing" devices? That the position within the vault of the circuit-closers of the complainant's system is considered by it and its counsel an essential element of its combination appears from the brief of the latter. It is there said:

"An essential feature of this gong-protected device is the shield which incloses the gong and is itself supported by a bolt extended through the wall of the vault and provided upon *its end within the vault* with circuit-closing devices (the washer, 9, and sleeve, 12). * * * It [the Robinson & Green patent] is not perhaps to be considered as a strictly pioneer patent, * * * in the sense that it is the first to provide an electric burglar alarm. * * * It is, however, a strictly pioneer patent providing a gong upon the outer wall of the vault connected to circuit-closers *within the vault,* and with a shield arranged over and inclosing the gong and adapted to operate the circuit-closers *within the vault,* if attempt be made to move the shield. * * *"

The obvious purpose of placing the circuit-closers within the vault is to put them under its shelter, and such location is a material element in the combination of the patent; and circuit-closers not so protected, and constructed to operate in substantially the same manner as those of the patent, are in our opinion a material departure from the combination of the complainant's system. In the defendant's system the circuit-closers are on the outer wall of the vault under the protection of its shield only; but the battery and some of the mechanisms, *other* than the circuit-closers are, or may be, within the vault, and it was inadvertently stated in the opinion that *they were all* upon the outer wall of the vault. This statement, though quite immaterial, as it relates to the location of the devices *other* than

the "circuit-closers," may be misleading as to the construction of those parts of the defendant's system. The opinion as it relates to the question of infringement will therefore be modified by striking therefrom the part near its center beginning with the words, "In this combination," and extending to the word "True," and substituting therefor the following:

"In this combination the insulating-sleeve or bushing, 2, the plate, 3, and the location within the vault of the circuit-closers of the patent (the washer, 9, and collar, 12) are essential elements. In the defendant's system the 'circuit-closers' are located upon the outer wall of the vault, and protected by the shields which cover them, but where they may be more easily interfered with and the system crippled than if they were located within the vault. It omits entirely the insulating-sleeve, 2, of the patent, and substitutes nothing therefor; in fact such a sleeve is not an essential element of its system."

It is not denied that the insulating-sleeve or bushing, 2, of the patent, is wholly omitted from the defendant's system, but the petition for rehearing says:

"That the insulated wires from the battery and drop to the gong are shown in this sketch (a sketch of defendant's system) for convenience, as running directly through the wall of the vault, but they do, as a matter of fact, run through the tubular bolt; the insulation of the wires being exactly the electrical equivalent of the insulation of the sleeve, 2, of the patent."

We are unable to agree with this contention of counsel. In Fay v. Cordesman, 109 U. S. 408, 420, 3 Sup. Ct. 236, 244, 27 L. Ed. 979, the Supreme Court states the rule as to infringements of patents for a combination as follows:

"In such a claim, if the patentee specifies any element as entering into the combination, either directly by the language of the claim, or by such a reference to the descriptive part of the specification as carries such element into the claim, he makes such element material to the combination, and the court cannot declare it to be immaterial. It is his province to make his own claim and his privilege to restrict it. If it be a claim to a combination, and be restricted to specified elements, all must be regarded as material, leaving open only the question whether an omitted part is supplied by an equivalent device or instrumentality."

And in Eames v. Godfrey, 1 Wall. 78–79, 17 L. Ed. 547, that court also said:

"The end in view is proposed to be accomplished by the union of all, arranged and combined together in the manner described. The use of any two of these parts only, or of two combined with a third, which is substantially different in form or in the manner of its arrangement and connection with the others, is therefore not the thing patented. It is not the same combination, if it substantially differs from it in any of its parts."

In the Robinson & Green patent the insulating-sleeve or bushing, 2, the plate, 3, and the location *within the vault* of its "circuit-closers" (the washer, 9, and the collar, 12) are specified as material elements of the combination in that patent. We are not at liberty, therefore, to declare them to be immaterial, and are of the opinion that the insulation of the wires of the defendant's system is not the mechanical equivalent of the insulating-sleeve or bushing, 2, of the patent.

Upon the other points urged in the petition for rehearing we are content with the opinion as it is.

The opinion upon the question of infringement of the Robinson & Green patent is modified as hereinbefore indicated, and the petition for rehearing denied.

SANBORN, Circuit Judge (dissenting). The opinion upon the motion for rehearing emphasizes one of the reasons for my dissent. As I understand the letters patent to Robinson and Green, they do not claim or attempt to secure a novelty of the means of forming an electric circuit or a circuit-closer. Means adapted to form such a circuit and such a circuit-loser, including those used by both complainant and defendant, were in fact, and were conceded by the patentees to be, old and familiar mechanical equivalents. While the patentees show an electric circuit and a circuit-closing device, they show it, not as their novel invention, but merely as a method by which they prefer to form certain elements of their combination. Thus they say in their specifications:

"The conductors, 27 and 28, extend to any circuit-closing devices arranged to be operated when an attempt is made to open the safe or vault or apartment to which the device is applied."

And their claim 8, for example, is not for the novelty or invention of these elements, but it is for—

"the combination (1) with the wall of a vault safe or other receptacle, (2) of a suitable gong or alarm located on the outside of said wall, (3) an electric circuit in which said gong is located, (4) a shield inclosing said gong, and (5) means for closing said electric circuit and thereby operating the said gong or alarm upon the moving of said shield, substantially as described."

A combination of old elements which accomplishes a new and beneficial result, or attains an old result in a more facile, economical, or efficient way, may be protected by patent as securely as a new machine or composition of matter. Seymour v. Osborne, 11 Wall. 516, 542, 548, 20 L. Ed. 33; Gould v. Rees, 15 Wall. 187, 189, 21 L. Ed. 39; Thomson v. Bank, 53 Fed. 250, 253, 3 C. C. A. 518, 520, 521. And the doctrine of mechanical equivalents is governed by the same rules and has the same application when the infringement of a patent for a combination is in question as when the issue is over the infringement of a patent for any other invention. Imhaeuser v. Buerk, 101 U. S. 647, 653, 25 L. Ed. 945; Griswold v. Harker, 10 C. C. A. 435, 437, 62 Fed. 389, 391; Fay v. Cordesman, 109 U. S. 408, 420, 3 Sup. Ct. 236, 27 L. Ed. 979; Water-Meter Co. v. Desper, 101 U. S. 332, 25 L. Ed. 1024.

To my mind the defendant uses a combination of equivalent mechanical elements by which it accomplishes the same end by substantially the same means attained by these patentees. It certainly has "an electric circuit in which said gong is located" and "means for closing said electric circuit and thereby operating said gong or alarm upon the moving of said shield." The specific details of wires, tubes, springs, and bolts which constitute the circuit in which the gong is located and the particular means for closing the circuit and operating the gong thereby when the shield is moved are not essential, and are not claimed as such, in this claim 8 of the patent. They were not

material, and there were many other well-known details and devices, including, as I believe, those used by the defendant, which were available to the skilled mechanic to form such circuits and circuit-closers, and were the clear mechanical equivalents of the details and devices described in the patent as one method of forming these elements of the combination. After a careful reconsideration of this case I have been unable to bring my mind to assent to the conclusion that where the claim of a patent is for the combination with other elements of an electric circuit in which the gong is located and means for closing the circuit and operating the gong upon the movement of the shield, and the specific means described in the specification for forming the circuit and the circuit-closer are not claimed as essential, but are clearly shown by both specification and claim to be a mere preferred method of forming the circuit and the circuit-closer, a defendant who uses the combination of the very elements described and claimed, and thereby accomplishes the very result sought by the patentee, escapes infringement, either because it places its circuit-closer on the outside of the vault protected by the gong and shield when the patentees expressly declare in the specification that they "preferably" placed it within the vault, or because it uses insulated wires extending through the wall of the vault in a hollow tube, instead of wires extending through the wall of the vault in a hollow tube surrounded by insulated bushing, or because by a different arrangement of well-known means of forming an electric circuit and a circuit-closer an insulating plate on the wall of the vault, which is not claimed as essential, is made unnecessary and omitted. These were not, in my opinion, the essentials of this claim, or of this patent. They were but the immaterial details of well-known means to form some of the claimed elements of the combination patented. The defendant is using that combination and every element of it: (1) The wall of the vault; (2) the gong on the outside of the vault; (3) "an electric circuit in which said gong is located;" (4) a shield inclosing said gong; and (5) "means for closing said electric circuit and thereby operating the said gong or alarm upon the moving of said shield, substantially as described." By the use of this combination it is accomplishing the end which the patentees secured by their combination. It has adopted the principle of the invention, and it should not be permitted to escape an accounting for its misappropriation.

The description in a specification or drawing of details which are not, and are not claimed as, essential elements of a combination, is the mere pointing out of the better method of using the invention. City of Boston v. Allen, 91 Fed. 248, 249, 33 C. C. A. 485; National Hollow Brake Beam Co. v. Interchangeable Brake Beam Co., 45 C. C. A. 544, 566, 106 Fed. 693, 715; J. L. Owens Co. v. Twin City Separator Co., 168 Fed. 259, 266, 93 C. C. A. 561, 568; Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 418, 28 Sup. Ct. 748, 52 L. Ed. 1122.

Mere changes of the form of some of the mechanical elements of a combination secured by patent will not avoid infringement, where the principle of the patented invention is adopted, unless the form of

the elements changed is the distinguishing characteristic of the invention. Watch Co. v. Robbins, 64 Fed. 384, 396, 12 C. C. A. 174, 187; New Departure Bell Co. v. Bevin Bros. Mfg. Co. (C. C.) 64 Fed. 859; Kinloch Telephone Co. v. Western Electric Co., 113 Fed. 652, 655, 51 C. C. A. 362, 365; Anderson v. Collins, 122 Fed. 451, 455, 58 C. C. A. 669, 673; Lourie Implement Co. v. Lenhart, 130 Fed. 122, 128, 64 C. C. A. 456, 462.