## HYMAN v. F. W. WOOLWORTH CO.

### SAME v. BUTLER BROS.

Circuit Court of Appeals, Eighth Circuit.
October 8, 1928.

Nos. 7967, 7968.

John H. Bruninga, of St. Louis, Mo., for appellant.

William S. Pritchard, of New York City (Bruce S. Elliott, of St. Louis, Mo., on the brief), for appellees.

Before WALTER H. SANBORN and LEWIS, Circuit Judges, and PHILLIPS, District Judge.

PHILLIPS, District Judge. In cause No. 7967, Hyman brought a suit against the Woolworth Company for injunction and accounting, predicated on an alleged infringement of patent No. 1,445,193, issued February 13, 1923, to Ernest Alschuler. After its issue such patent passed by assignment to appellant. The trial court held that there was no infringement and entered a decree dismissing the bill.

The claims of the patent in suit alleged to have been infringed are Nos. 6, 7, 8 and 9. They read as follows:

"6. A battery hand lamp, comprising, a battery receiving casing provided with an exterior end fitting in the lamp circuit, an end cap mounted on said fitting, and an element mounted in but insulated from said cap connected with the battery and adapted to contact with said fitting.

"7. A battery hand lamp, comprising, a battery receiving casing provided with an exterior end fitting in the lamp circuit, an end cap mounted on said fitting, an element mounted in but insulated from said cap, and a spring carried by said element and engaging the battery, said element being adapted to contact with said fitting.

"8. A battery hand lamp, comprising, a battery receiving casing provided with an exterior end fitting in the lamp circuit, an end cap mounted on said fitting, an element mounted in but insulated from said cap and connected with the battery, and a flange on said fitting adapted to contact with said element.

"9. A battery hand lamp, comprising, a battery receiving casing provided with an exterior end fitting in the lamp circuit, an end cap mounted on said fitting, an element mounted in but insulated from said cap, a spring carried by said element and engaging the battery, and a flange on said fitting adapted to contact with said element."

Appellant asserts that the claims in suit are directed to particular end cap switch structures, not only as sub-combinations, but as distinct entities, adapted for employment in a flash light, whether that flash light has a center switch or not. The fact that the claims in suit do not mention a center switch, while certain of the other claims do mention such switch, gives strength to appellant's contention, and, for the purpose of determining the present case, we will accept his theory of the claims in suit.

The elements of claim 9 which is typical of all the claims in suit are: (1) A battery-receiving casing provided with an exterior end fitting in the lamp circuit, (2) an end cap mounted on such casing, (3) an element mounted in but insulated from such end cap, (4) a spring carried by such element and engaging the battery, and (5) a flange on such end fitting adapted to contact with such element.

In the specification, the patentee states that one of the objects of the invention is to provide a lamp construction which will insure against the accidental discharge of the battery.

The patent drawings are as follows:

The construction and operation of the patented device are described in the specification, in part, as follows:

"The usual metallic end cap *18* may be provided to be screwed on to the sleeve *17.* Within the cap *18,* but insulated therefrom by means of the flanged insulating washer *19,* is a metallic disc, having an overturned flange *21* adapted to receive and retain one coil of the usual battery supporting spring *22.* These parts are so arranged that when the cap *18* is screwed upon the sleeve *17,* the flange *21* will contact with the flange *16,* thereby completing the circuit from the battery to the switch *12.*

"It will be seen that since the lamp circuit is completed through the contact between the flanges *16* and *21,* said circuit may be opened by unscrewing the cap *18,* so as to separate those flanges. It will also be seen that with these flanges so separated, it will be impossible to light the lamp by manipulation of the switch *12* or by any accidental contact which may establish an external circuit between any of the outside metal fittings."

In appellant's commercial device constructed under the patent the sleeve of the battery casing is constructed of fibre. Attached to one end thereof is an end fitting which forms part of the lamp circuit. The end cap is constructed so it may be screwed on and off this end fitting. A circular disc of insulating material is inserted in the top of the end cap. It is held in place by constructing the ring and screw portions of the end cap of a less diameter than the top of the cap and the circular disc of insulating material. Attached to this insulating disc is a metallic disc crimped over at the edge so as to hold one end of the battery spring, and also form a flange to connect with the flange on the end cap fitting. The battery spring connects with the other end of the battery, and thus the spring, the metallic disc, and the end fitting form part of the lamp circuit. When the cap is screwed up on the end fitting, the flange of the metallic disc is carried against the flange of the end fitting and the circuit is closed. When the cap is partially unscrewed, the metallic disc is carried away from the flange of the end fitting and the circuit is broken. Since the metallic disc is rigidly mounted in the end cap, when the latter is unscrewed a sufficient distance to break the circuit, there is no way in which the metallic disc can be pushed down against the flange of the end fitting and the circuit thereby closed, and because the end cap when in place completely covers the metallic disc, there is no way for any foreign conducter to touch the metallic disc and the end fitting and thereby close the circuit.

The alleged infringing device is illustrated by the following drawings:

PERSPECTIVE
WITH UNITS SEPARATED.

It does not employ an end cap, but rather an end ring, a circular portion of the top of the cap being cut out. A metallic disc and an insulating disc are employed, but the metallic disc and insulating disc are fastened together by a non-insulated rivet, and one end of the battery spring is attached to the inward end of this rivet. The insulating disc and metallic disc, instead of being mounted rigidly in the end ring, are constructed so they will move backward and forward like a push button inside the ring. The operator of the alleged infringing device may open and close the circuit by screwing the end ring backward and forward and he may close the circuit by simply pressing the two discs forward against the spring like a push button is

moved, and may open the circuit by the force of the spring, by removing such pressure from the two discs.

Because of the fact that the end ring is employed instead of the end cap and the insulating disc operates like a push button instead of being rigidly mounted in such end ring, elimination of danger of accidental closing of the lamp circuit is not accomplished in the alleged infringing device. This is true because force might accidentally come in contact with the insulated ring and push it and the metallic disc forward and thus close the lamp circuit and also a conductor might accidentally come in contact with the exposed outward end of the non-insulated rivet and the end ring and close the lamp circuit.

In the claims of the patent in suit, the metallic disc is firmly mounted in the end cap. This is likewise true in the commercial device of the appellant. Because of this fact in appellant's device the metallic disc is carried in the end cap toward and against the flange of the end fitting when the end cap is screwed up and is carried away and held away from the flange of the end fitting when the end cap is partially unscrewed. The metallic disc being firmly mounted in the end cap, the position of the end cap on the screw threads at all times invariably controls the position of the metallic disc.

On the other hand, in the alleged infringing device, while the metallic disc is located within the end ring, it is not rigidly mounted therein. When the end ring is screwed on to the end fitting, it operates as the force on a push button and pushes the metallic disc forward against the flange of the end fitting. When the end ring is unscrewed it releases this force, and the spring pressure pushes the metallic disc away from contact with the flange of the end fitting, but the position of the metallic disc is not invariably controlled by the position of the end ring on the screw threads.

In the patent in suit the metallic disc moves backward and forward solely by force of the end cap because it is firmly mounted therein. In the infringing device it moves toward the point of contact by force of the end ring or by force of the operator's thumb and moves away from the point of contact by force of the spring.

From the foregoing it will be seen that the functions of the elements employed, the principle or mode of operation devised, and the results attained in the alleged infringing device, are essentially different from the functions of the elements employed, the principle or mode of operation devised, and the results attained in the patent in suit.

Furthermore, the end cap and the end ring are substantially different from the viewpoint of the respective functions which they perform. We use the word "function" here in the sense of the power or property of the element acting in the manner designed or intended—that which the element is designed to do as distinguished from the element itself and from the product of its action upon something external to itself. American Steel & Wire Co. v. Denning Wire & Fence Co. (C. C.) 160 F. 108, 113.

The function of the metallic disc in the patent in suit is to travel backward and forward, and thus close and break the lamp circuit. The function of the end cap of the patent in suit is to carry the flange of the metallic disc against and away from the end fitting and thus close and break the lamp circuit, but it has another important function; that is, when partially unscrewed, to rigidly hold the flange of the metallic disc away from contact with the end fitting and to cover them and thereby shield them against accidental connection either by an outside force or by reason of their coming in contact with a foreign conductor. It is this latter function which this end cap performs which accomplishes one of the primary objects of the patent in suit.

On the other hand, in the infringing device the function of the metallic disc is to move backward and forward, and thus open and close the circuit, and the function of the end ring is to force the metallic disc against and in contact with the flange of the end fitting and thus close the circuit and to release it from this contact and to permit it to be pushed away from contact by pressure of the spring. To this extent it may produce a result similar to that produced by the end cap of the patent in suit, but it produces it in a substantially different manner. However, it does not perform the function of the end cap of the patent in suit, in that it does not rigidly hold the metallic disc away from contact and does not form a protective covering of the metallic disc and the flange on the end fitting and thus prevent accidental discharge either by outside force or by reason of contact with a foreign conductor.

■ The applicable principles by which the question of infringement must be determined are well stated in the following quotations from the adjudicated cases:

In Burr v. Duryee, 1 Wall. 531, at page 572 (17 L. Ed. 650), the court said:

"Now, 'an infringement involves substantial identity, whether that identity be described by the terms, "same principle," same "modus operandi," or any other. It is a copy of the thing described in the specification of the patentee, either without variation, or with such variations as are consistent with its being in substance the same thing. If the invention of the patentee be a machine, it will be infringed by a machine which incorporates in its structure and operation the substance of the invention; that is, by an arrangement of mechanism which performs the same service or produces the same effect in the same way, or substantially the same way.' "

In Electric Signal Co. v. Hall Signal Co., 114 U. S. 87, at page 96, 5 S. Ct. 1069, 1075 (29 L. Ed. 96), the court said:

"The object of the patented combination was the accomplishment of a particular result, that is, to work electric signals on what was known as the 'block' system, by means of circuits, operated by a single battery, instead of many. But this result or idea is not monopolized by the patent. The thing patented is the particular means devised by the inventor by which that result is attained, leaving it open to any other inventor to accomplish the same result by other means. To constitute identity of invention, and therefore infringement, not only must the result attained be the same, but in case the means used for its attainment is a combination of known elements, the elements combined in both cases must be the same, and combined in the same way, so that each element shall perform the same function, provided, however, that the differences alleged are not merely colorable, according to the rule forbidding the use of known equivalents."

In Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, at page 569, 18 S. Ct. 707, 723 (42 L. Ed. 1136), the court said:

"The alleged infringer must have done something more than reach the same result. He must have reached it by substantially the same or similar means, or the rule that the function of a machine cannot be patented is of no practical value."

In Union Paper Bag Machine Co. v. Murphy, 97 U. S. 120, at page 125 (24 L. Ed. 935), the court said:

"In determining the question of infringement, the court or jury, as the case may be, are not to judge about similarities or differences by the names of things, but are to look at the machines or their several devices or elements in the light of what they do, or what office or function they perform, and how

they perform it, and to find that one thing is substantially the same as another, if it performs substantially the same function in substantially the same way to obtain the same result, always bearing in mind that devices in a patented machine are different in the sense of the patent law when they perform different functions or in a different way, or produce a substantially different result."

In Anakin Lock Works Co. v. Dillon Lock Works et al. (C. C. A. 8) 292 F. 45, at page 48, this court said:

"Infringement involves substantial identity, and to constitute an infringement the device made and used by defendant must be such as substantially to embody the patentee's mode of operation, and thereby to attain the same kind of result, in substantially the same kind of way, as was reached by the device of the plaintiff. Sewall v. Jones, 91 U. S. 171, 23 L. Ed. 275; Winans v. Denmead, 15 How. 330, 14 L. Ed. 717. And where there is a substantial difference in the principle of two devices, one will not be held to be an infringement of the other. Werner v. King, 96 U. S. 218, 24 L. Ed. 613; Pope, etc., Co. v. Gormully, etc., Co., 144 U. S. 238, 12 S. Ct. 637, 36 L. Ed. 419; Grier v. Wilt, 120 U. S. 412, 7 S. Ct. 718, 30 L. Ed. 712; Worden v. Searls, 121 U. S. 14, 7 S. Ct. 814, 30 L. Ed. 853."

In Electric Protection Co. v. American Bank Protection Co. (C. C. A. 8) 184 F. 916, at page 923, this court said:

"The question remains, Does the defendant infringe either of these claims? To sustain the charge of infringement the infringing device must be substantially identical with the one alleged to be infringed in (1) the result attained; (2) the means of attaining that result; and (3) the manner in which its different parts operate and co-operate to produce that result. If the devices are substantially different in either of these respects the charge of infringement is not sustained."

In James Heekin Co. v. Baker et al. (C. C. A. 8) 138 F. 63, at page 65, this court said:

"Identity of result is, however, not a sufficient test of infringement. There must also be substantial identity of the means and manner of its accomplishment."

In Portland Gold Mining Co. v. Hermann (C. C. A. 8) 160 F. 91, at page 99, this court said:

"In a combination device consisting in congeries of well-known mechanical appliances, no liberality of construction is accorded to it to create a monopoly; but it is limited

838

to the descriptive elements in the combination as expressed in the specifications; and no great liberality of the doctrine of mechanical equivalents can be indulged in its favor. As the applicant for such combination of old devices chooses his own expressions in presenting it, and is required to enumerate the elements of his claim, he is limited to the combined apparatus as specified. And no one is an infringer of a combination claim unless he uses the elements thereof, and in substantially the same mode of co-operation."

In Electro-Dynamic Co. v. U. S. Light & Heat Corporation (C. C. A. 2) 278 F. 80, at page 85, the court said:

"There can be no infringement, unless defendant's combination is of substantially the same elements functioning co-ordinately in the same way."

In Ladd v. W. & H. Walker, Inc., et al. (C. C. A. 3) 7 F.(2d) 72, at page 77, the court said:

"It is well-settled law that there is no infringement if one of the elements described by the patentee as essential is omitted without the substitution of an equivalent."

In Pacific Cable Ry. Co. v. Butte City St. Ry. Co. (C. C. A. 9) 58 F. 420, at page 421, the court said:

"An 'equivalent' is defined in Walker on Patents (sections 352–354) as a device 'which performs the same function as another,' and 'in substantially the same way as by the thing of which it is alleged to be an equivalent.'"

In Superior Skylight Co., Inc., v. August Kuhnla, Inc., et al. (C. C. A. 2) 273 F. 482, at page 485, the court said:

"Within the rule of equivalents, the thing thought to be the equivalent must be shown to perform the same function and to do it in substantially the same manner as the thing of which it is alleged to be the equivalent."

An application of these principles to the facts in the instant case compels the conclusion that the device of the appellee does not infringe because the functions of the elements it employs, the mode of their operation, and the results they produce, are essentially and substantially different from the functions of the elements employed, the mode of their operation, and the results produced under the claims of the patent in suit; and because the end ring and end cap are not mechanical equivalents, in that they perform different functions, and the end ring produces one result produced by the end cap in a substantially different way from the latter, and wholly fails to produces one important result produced by the latter.

For the foregoing reasons, we conclude that the trial court correctly ruled there was no infringement.

The decree is therefore affirmed.

## II.

In cause No. 7968, Hyman brought a suit against Butler Bros. for injunction and accounting predicated on alleged infringement of claims 6, 7, 8 and 9, of patent No. 1,445,193, and also claims 7, 8, 9 and 10 of a companion patent No. 1,404,259, issued on January 24, 1920, to Ernest Alschuler. After its issue the latter patent passed by assignment to appellant. The trial court held there was no infringement and dismissed the bill.

In the claims in suit under the latter patent and the commercial devices involved in this cause, metallic sleeves are employed instead of fibre. The rivet which holds the metallic disc to the insulated disc in the alleged infringing device in this cause is insulated on its outward end, and for this reason the circuit cannot be closed by a connection between such rivet and the end ring. Except for the foregoing differences, what we have said in cause No. 7967 equally applies to the patents and the alleged infringing device involved in this latter cause.

Therefore, for the reasons stated in the discussion under cause No. 7967, we conclude there was no infringement of the claims of the patents involved in this suit.

The decree is therefore affirmed.

Note. Judge SANBORN was not ready to express his views about this case at our conference, and left no memoranda in relation thereto at the time of his death.